NEIL BARRY ET AL. *v.* QUALITY STEEL
PRODUCTS, INC., ET AL.

BERNARD COHADE ET AL. *v.* QUALITY STEEL
PRODUCTS, INC., ET AL.
(SC 16700)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued September 11, 2002—officially released May 6, 2003

*Joel T. Faxon* and *David Beekman*, pro hac vice, with whom was *Andrew J. Maloney III*, pro hac vice, for the appellants (plaintiffs).

*Philip T. Newbury, Jr.*, for the appellees (defendants).

*Andrew J. O'Keefe*, with whom were *Joseph M. Busher, Jr.*, and, on the brief, *Denise Martino Phelan*, for the appellee (intervening plaintiff).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal involves the viability of the doctrine of superseding cause. The plaintiffs, Neil Barry, Diana Barry, Bernard Cohade and Lynn Cohade,[1] appeal[2] from the judgment of the trial court in favor of the named defendant, Quality Steel Products, Inc. (Quality Steel), and the defendant Ring's End, Inc. (Ring's End). On appeal, the plaintiffs claim that the trial court improperly instructed the jury on the doctrine of superseding cause because: (1) the alleged negligence of the plaintiffs' employer, DeLuca Construction Company (DeLuca), was not outside the scope of the original risk posed by the defendants' defective product; and (2) any negligence by DeLuca was not the sole proximate cause of the plaintiffs' injuries. The defendants claim that the trial court properly instructed the jury on the doctrine of superseding cause because the jury could consider the combined negligence of the plaintiffs, their coworker and DeLuca as a superseding cause of the plaintiffs' accident. Addi-

[1] The defendants moved to consolidate the two separate actions brought by the Barrys and the Cohades, respectively. The motion for consolidation was granted by the trial court. Diana Barry's and Lynn Cohade's claims for loss of consortium are derivative of the injuries of their respective husbands. For purposes of this appeal, therefore, references to the plaintiffs are to Neil Barry and Bernard Cohade.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

tionally, the defendants contend that, if we order a new trial, we should consider whether the trial court improperly: (1) excluded evidence of the absence of prior accidents involving the same product; (2) excluded certain expert testimony; (3) denied the defendants' motion to bifurcate the liability and damages portions of the trial; and (4) granted summary judgment in favor of DeLuca, which had intervened as a plaintiff in the action.[3] As we explain herein, we conclude that the doctrine of superseding cause, as applied in the present case, no longer plays a useful role in our common law of proximate cause. Accordingly, we reverse the judgment of the trial court in favor of the defendants and order a new trial.

The plaintiffs brought this product liability action[4]

---

[3] DeLuca moved to intervene and filed a complaint against the defendants in order to recover the amount that it had paid to the plaintiffs under the Workers' Compensation Act. The trial court granted DeLuca's motion. Subsequently, the defendants filed a counterclaim against DeLuca seeking indemnification for all attorney's fees, costs and expenses incurred in defending the plaintiffs' claim. DeLuca moved for summary judgment claiming that the indemnity claim was barred by the exclusive remedy provisions of the Workers' Compensation Act, General Statutes § 31-284. The trial court granted DeLuca's motion.

[4] Our conclusion that the defendants were not entitled to a superseding cause instruction is premised solely on a common-law analysis of the law of proximate and superseding causes, because that is the way this case was tried to a jury and argued on appeal regarding the law of causation. We note, however, that this was a products liability case, which is governed by General Statutes §§ 52-572m through 52-572q. General Statutes § 52-572o, entitled "[c]omparative responsibility," and General Statutes § 52-572p, entitled "[l]imitation of liability of product seller," incorporate notions of apportionment of responsibility and damages and misuse of a product, respectively, and arguably may affect how the principles we articulate herein should apply on retrial.

More specifically, subsections (a), (b) and (c) of § 52-572o set forth principles of comparative responsibility, and subsection (d) sets forth principles of joint and several liability. Subsection (e) of § 52-572o sets forth principles of contribution. To the extent that these provisions are based on principles of comparative fault, they are consistent with the principles that we articulate in this opinion. Furthermore, § 52-572p sets forth principles regarding alteration or modification of a product, which may be consistent or inconsistent with the claims of the defendants regarding the use of their product. Finally,

pursuant to General Statutes § 52-572m et seq.[5] against Quality Steel alleging that it had designed and manufactured a defective product, namely, roof brackets, which were utilized by the plaintiffs in the hanging of shingles, and against Ring's End, the seller of the brackets.[6] Thereafter, the plaintiffs filed a motion in limine asking the trial court to exclude evidence of any alleged negligence on the part of DeLuca, and to deny the defendants' request to charge the jury on the doctrine of superseding cause. The court denied the motion and, at the end of the testimony, the trial court instructed the jury on the doctrine of superseding cause.[7] After

any of these provisions, to the extent applicable to the facts of this case, may be consistent or inconsistent with the exclusivity of remedy principles of the Worker's Compensation Act. We refer to these statutory provisions because, as the case was argued and briefed in this court, and apparently as presented to the jury in the trial court, none of these provision were discussed, and it may be that they will apply to some extent to the facts of the case in the ensuing retrial.

[5] General Statutes § 52-572m (b) provides: " 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent."

[6] The plaintiffs' complaints also included one count alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The trial court granted the defendants' motion to strike the CUTPA counts from the plaintiffs' complaints. That ruling is not before us in this appeal.

[7] The trial court's instructions to the jury provided in relevant part: "There's another defense the defendants have asserted and that is superseding cause. The defendants assert as a defense that the negligence of third parties, [DeLuca], [Nate] Manizza, the DeLuca foreman, and the plaintiffs combined as an intervening or superseding cause of the injuries to the plaintiffs and exonerates any liability of the defendants.

"A superseding cause is an actual cause that is a substantial factor in the resulting harm and proximate cause of that harm.

"A superseding cause is an act of a third person or other forces, which by its intervention, prevents the actor, that is, the defendants, from being liable for harm to another which the defendants' antecedent or prior negli-

answering a set of special interrogatories,[8] the jury

gence is a substantial factor in bringing about.

"One negligent party, the defendants, can, by identifying other parties' superseding conduct, exonerate themselves from liability by shifting the causation element entirely elsewhere. They can avoid liability by shifting and showing that the accident was caused—the causative element is entirely the result of superseding forces, which I'll describe the claims now.

"The defendants assert that even if the roof brackets were defective, the superseding combination of negligence by [DeLuca] and its employees intervened to relieve the defendants of liability.

"The alleged negligence of DeLuca was with reference to the lack of fall protection which could have been another scaffolding or netting or something along those lines. The fall protection was described by [Dino] Gigante, who was [the] defendants' expert. The [Occupational Safety and Health Administration (OSHA)] report, which you have, indicates—found no OSHA violations by DeLuca. You have the OSHA report. However, Mr. Gigante, the defendants' expert, testified that OSHA did require the fall protection for this type of roof, so you have conflicting evidence and you'll have to resolve that and determine whether there was negligence by DeLuca.

"The negligence that is asserted or alleged that the DeLuca employees engaged in relates to the installation of the bracket. Mr. Manizza, the foreperson, may have installed roof brackets with eightpenny nails, which would have been too small.

"The plaintiffs, Neil Barry and Bernard Cohade, testified they would have probably used twelvepenny nails, and you'll have to recall their testimony. The defendants' notice required sixteenpenny nails. You must determine if that could have caused the collapse of the scaffolding if you determined that they used smaller nails. The defendants' experts testified, I believe, that a twelvepenny nail would probably hold the bracket, but you have to determine whether there was negligence in the installation and whether that caused the collapse of the scaffolding.

"So you must determine if there was negligence by [DeLuca] and its employees in installing the roof brackets and not using additional fall protection beyond the roof brackets and scaffolding. If you find that there was negligence by DeLuca and its employees, you may also determine that it was of such sufficient causation or causative effect as to the fall of Neil Barry and Bernard Cohade, that it absolves the defendants, even if the product was unreasonably dangerous and defective. Again, you have to determine, the defendants, which regard to superseding cause, have the burden of cause both with the negligence of the parties and that the combination of that negligence by DeLuca, Manizza and the plaintiffs was the causation for the accident, it wasn't any defect in the brackets."

[8] The following interrogatories were submitted to the jury and were answered in following manner:

"(1) Have the plaintiffs proved that the roof bracket was defective and unreasonably dangerous at the time it was sold by the defendants?

returned a verdict in favor of the defendants on all counts. The trial court denied the plaintiffs' motion to set aside the verdict and rendered judgment for the defendants. This appeal followed.

The jury reasonably could have found the following facts. The plaintiffs were employed as carpenters by DeLuca. On February 26, 1998, the plaintiffs were putting shingles on the roof of the New Canaan Nature Center when the platform staging on which they were working collapsed, causing the plaintiffs to fall to the ground and sustain severe injuries. Immediately prior to the collapse, the plaintiffs were working on a wooden plank attached to the roof by roof brackets designed and manufactured by Quality Steel and purchased from Ring's End.

The roof brackets were used as part of a structure that created a platform on which the plaintiffs could

"YES ____X____ NO _____
"If YES, go on to question 2.
"If NO, stop here and return your verdict for the defendants.
"(2) Have the plaintiffs proved that the defective condition alleged was a proximate cause of the accident at the New Canaan Nature Center on February 26, 1998?
"YES ____X____ NO _____
"If YES, go on to question 3.
"If NO, stop here and return your verdict for the defendants.
"(3) Have the defendants proved that the roof bracket was misused by Nate Manizza, by use of the wrong sized nail head, and that such misuse was the sole proximate cause of the accident?
"YES _____ NO ____X____
"If YES, stop here and return your verdict for the defendants.
"If NO, go on to question 4.
"(4) Have the defendants proved that the combined conduct of DeLuca Construction Company and its employees, including the plaintiffs, Neil Barry and Bernard Cohade, and Nate Manizza, was an intervening cause of the accident that supercedes and cuts off any liability on the part of the defendants?
"YES ____X____ NO _____
"If YES, stop here and return your verdict for the defendants.
"If NO, go on to question 5. . . ."

work. To install the brackets, the plaintiffs nailed them to the roof through three slots on the bracket. After the brackets were attached to the roof, a plank was placed on top of the brackets, which then provided a surface on which the plaintiffs could stand in order to shingle the roof. Although there had been additional pipe scaffolding located around the perimeter of the roof prior to the time the plaintiffs fell, it was taken down before the plaintiffs' accident.

After working on the planks for several hours in the morning, the plaintiffs returned to the planking after lunch and began shingling the roof on the right side of the building. Shortly after the plaintiffs returned to work on the roof, the planking suddenly fell out from under them and they fell to the ground. Almost immediately after the plaintiffs fell, Gene Marini, the general superintendent at DeLuca, discovered one of the roof brackets used by the plaintiffs in a distorted condition on the ground near where they fell.[9]

Quality Steel's instruction label on the roof brackets suggests that the user attach the brackets to the roof using sixteenpenny nails.[10] The defendants introduced evidence that some of the brackets were installed by another DeLuca employee, Nate Manizza, using eightpenny nails. The plaintiffs both testified that when they installed roof brackets they used larger, twelvepenny nails. Neither the plaintiffs nor Manizza could remember if they had installed the specific brackets that had

---

[9] At trial, Marini testified as follows regarding notes that he had made after his investigation of the accident: "I began to review the area where the accident occurred and I noticed that one of the roof brackets was on the ground. I noticed right away that this bracket was distorted. The ground that [the] men fell upon was littered with approximately one bundle of roof shingles and miscellaneous wood blocking."

[10] The penny reference indicates the size of a nail. The plaintiffs' expert witness, Karl Puttlitz, a metallurgist, explained during his testimony: "As you increase in penny size, the dimensions [of the shaft and the nail itself] increase incrementally . . . ."

collapsed causing the plaintiffs to fall. Cohade testified, however, that he saw Manizza installing the brackets in the general area where the plaintiffs fell. There was also testimony from both the plaintiffs' and the defendants' experts that the use of a twelvepenny nail would be sufficient to hold the bracket to the roof and would not be causative of the collapse of the planking that occurred in this case.

The defendants also introduced evidence, through expert testimony, that DeLuca had violated the federal Occupational Safety and Health Administration (OSHA) regulations by failing to provide additional fall protection for the plaintiffs while they were working on the New Canaan Nature Center roof. The plaintiffs offered, and the jury reasonably could have found, however, that OSHA, in its investigation of the plaintiffs' accident, did not find any violations of roofing standards at the project site and that the roof brackets were an acceptable method of providing fall protection.

The jury also reasonably could have found that the roof bracket designed and manufactured by Quality Steel and used by the plaintiffs before the platform collapsed was undersized in comparison to the manufacturing specifications. Specifically, both the plaintiffs' and the defendants' experts testified that the platform arm of the roof bracket was thinner than required by Quality Steel's own specifications.[11] Additionally, the

---

[11] Puttlitz testified as follows: "The platform arm [of the bracket found near where the plaintiffs fell] was significantly low as you can see, all right, because this is the specification here. All right. The specification ranged from 0.1 to 0.11 and basically I measured . . . 0.088 to 0.089 and so this is off somewhere around 10 to 12 percent. . . . It's thin by about something like 10 or 12 percent."

George Kyanka, an accident reconstruction expert for the defendants, testified that he was aware of the manufacturer's specifications for the thickness of the platform arm of the roof bracket at issue in the case and that it was "slightly thinner than the recommended dimension."

Additionally, defense counsel conceded at oral argument before this court that there was evidence that the defendants' product was defective in that it was "slightly undersized."

jury, through their special interrogatories, found that Quality Steel's product was defective and unreasonably dangerous at the time it was manufactured and sold by the defendants, and that the defective condition of the product was a proximate cause of the plaintiffs' accident. See footnote 8 of this opinion.

I

The plaintiffs claim that the trial court improperly instructed the jury on the doctrine of superseding cause because: (1) the plaintiffs' injuries were not outside the scope of the risk created by the defendants' misconduct in manufacturing and selling a defective product; and (2) any negligence on the part of DeLuca was not the sole proximate cause of the plaintiffs' injuries. The defendants claim, in response, that the combined negligence of the plaintiffs, DeLuca and Manizza, constituted sufficient evidence of a superseding cause, thereby exonerating the defendants from the plaintiffs' product liability claim. We need not consider the propriety of the trial court's instructions on the doctrine of superseding cause because we conclude that the doctrine should be abandoned in a case such as the present one.

We begin our analysis with an examination of the relationship among proximate cause, concurrent cause and superseding cause. "Proximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force." *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 383, 441 A.2d 620 (1982). "[T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries." (Internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 25, 734 A.2d 85 (1999). A concurrent cause is one that is "contemporaneous and coexistent with the defendant's

wrongful conduct and actively cooperates with the defendant's conduct to bring about the injury." *Wagner v. Clark Equipment Co.*, 243 Conn. 168, 183, 700 A.2d 38 (1997). Finally, "[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."[12] (Internal quotation marks omitted.) Id., 179.

"The function of the doctrine of superseding cause is not to serve as an independent basis of liability, regardless of the conduct of a third party whose negligent conduct may have contributed to the plaintiff's loss. The function of the doctrine is to define the circumstances under which responsibility *may be shifted entirely* from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force." (Emphasis added; internal quotation marks omitted.) Id. "Thus, the doctrine of superseding cause serves as a device by which one admittedly negligent party can, by identifying another's superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere." (Internal quotation marks omitted.) Id. If a third person's negligence is found to be the superseding cause of the plaintiff's injuries, that negligence, rather than the negligence of

---

[12] Although we discuss the concept of superseding cause herein in relation to "antecedent negligence," we recognize that the present case is not based on negligence but on product liability. Nonetheless, the relationship between the concept of superseding cause and proximate cause, and the lack of continuing viability of the doctrine of superseding cause, which we discuss herein, apply equally to injuries proximately caused by a defective product, as well as injuries proximately caused by negligent conduct. Thus, our references herein to antecedent negligence in the context of proximate and superseding causes, necessarily includes the manufacture and sale of a defective product. Both references, therefore, are to antecedent *tortious* conduct—in this case, the manufacture and sale of a defective product.

the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury. *Miranti* v. *Brookside Shopping Center, Inc.*, 159 Conn. 24, 29, 266 A.2d 370 (1969); *Virelli* v. *Benhattie, Inc.*, 146 Conn. 203, 209, 148 A.2d 760 (1959).

The circumstances under which a defendant's liability for negligence shifts entirely to the superseding conduct of a third person has been well defined in our case law. "Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superseding cause may break that causal connection if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury; or it must be the nonconcurring culpable act of a human being who is legally responsible for such act. . . . If a defendant's negligence was a substantial factor in producing the plaintiff's injuries, the defendant would not be relieved from liability for those injuries even though another force concurred to produce them." (Citation omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 180.

In the present case, the jury's interrogatories reveal two possible sources of a superseding cause.[13] The first possible superseding cause of the plaintiffs' injuries was DeLuca's failure to provide additional fall protection for the plaintiffs. The second possible superseding cause was Manizza's use of eightpenny nails to attach the roof brackets to the roof.[14]

---

[13] We need not analyze whether either of these two possible causes of the plaintiffs' injuries would have qualified as a superseding cause completely exonerating the defendants from all liability because on the retrial it will be the jury's task to apportion fault in accordance with the principles we state herein.

[14] Jury interrogatory number three asked whether "the defendants proved that the roof bracket was misused by Nate Manizza, by use of the wrong sized nail head, *and* that such misuse was the sole proximate cause of the accident?" (Emphasis added.) The jury answered, "No," to that question. See footnote 8 of this opinion. This is a compound question. The more

We take this opportunity to clarify our approach to the doctrine of superseding cause and its continuing validity in our tort jurisprudence. As will be discussed in further detail later in this opinion, we conclude that the doctrine of superseding cause no longer serves a useful purpose in our jurisprudence when a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries. We conclude that under those circumstances, superseding cause instructions serve to complicate what is fundamentally a proximate cause analysis. Specifically, we conclude that, because our statutes allow for apportionment among negligent defendants; see General Statutes § 52-572h;[15] and because Connecticut is a comparative

reasonable interpretation of the jury's answer, especially in light of its answer to interrogatory number four, is that, although the defendants established that Manizza misused the roof bracket, that misuse was not the *sole* proximate cause of the plaintiffs' injuries.

[15] General Statutes § 52-572h provides: "(a) For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering; (3) 'recoverable economic damages' means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reduction provided by section 52-225a; (4) 'recoverable noneconomic damages' means the noneconomic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur.

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal

negligence jurisdiction; General Statutes § 52-572o; the

injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant.

"(g) (1) Upon motion by the claimant to open the judgment filed, after good faith efforts by the claimant to collect from a liable defendant, not later than one year after judgment becomes final through lapse of time or through exhaustion of appeal, whichever occurs later, the court shall determine whether all or part of a defendant's proportionate share of the recoverable economic damages and recoverable noneconomic damages is uncollectible from that party, and shall reallocate such uncollectible amount among the other defendants in accordance with the provisions of this subsection. (2) The court shall order that the portion of such uncollectible amount which represents recoverable noneconomic damages be reallocated among the other defendants according to their percentages of negligence, provided that the court shall not reallocate to any such defendant an amount greater than that defendant's percentage of negligence multiplied by such uncollectible amount. (3) The court shall order that the portion of such uncollectible

amount which represents recoverable economic damages be reallocated among the other defendants. The court shall reallocate to any such other defendant an amount equal to such uncollectible amount of recoverable economic damages multiplied by a fraction in which the numerator is such defendant's percentage of negligence and the denominator is the total of the percentages of negligence of all defendants, excluding any defendant whose liability is being reallocated. (4) The defendant whose liability is reallocated is nonetheless subject to contribution pursuant to subsection (h) of this section and to any continuing liability to the claimant on the judgment.

"(h) (1) A right of contribution exists in parties who, pursuant to subsection (g) of this section are required to pay more than their proportionate share of such judgment. The total recovery by a party seeking contribution shall be limited to the amount paid by such party in excess of such party's proportionate share of such judgment.

"(2) An action for contribution shall be brought within two years after the party seeking contribution has made the final payment in excess of such party's proportionate share of the claim.

"(i) This section shall not limit or impair any right of subrogation arising from any other relationship.

"(j) This section shall not impair any right to indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnitee is for indemnity and not contribution, and the indemnitor is not entitled to contribution from the indemnitee for any portion of such indemnity obligation.

"(k) This section shall not apply to breaches of trust or of other fiduciary obligation.

"(*l*) The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished.

"(m) The family car doctrine shall not be applied to impute contributory or comparative negligence pursuant to this section to the owner of any motor vehicle or motor boat.

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section.

"(o) Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action created by statute, except that liability may be apportioned among parties liable for negligence in any cause of action created by statute based on negligence including, but not limited to, an action for wrongful death pursuant to section 52-555 or an action for

the present one, where the jury must determine which, among many, causes contributed to the plaintiffs' injury, is to couch the analysis in proximate cause rather than allowing the defendants to raise a defense of superseding cause.[16]

We first note that, although nearly every treatise involving the law of torts acknowledges the existence of the doctrine of superseding cause, it is defined differently by various scholars. For example, one treatise notes that the problem of superseding cause is not primarily one of causation but, rather, "one of policy as to imposing legal responsibility." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 44, p. 301. Additionally, other treatises support the view that the doctrine of superseding cause is merely a more complicated analysis of whether the defendant's actions were the proximate cause of the plaintiff's injuries. For example, one treatise states: "[Superseding] cause is merely proximate cause flowing from a source not connected with the party sought to be charged. While the term may have some descriptive value, unduly elaborate discussion of [superseding] cause as such tends to becloud rather

injuries caused by a motor vehicle owned by the state pursuant to section 52-556."

[16] Our conclusion that the doctrine of superseding cause no longer serves a useful purpose is limited to the situation in cases, such as the one presently before us, wherein a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence. Our conclusion does not necessarily affect those cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct. See *Doe* v. *Manheimer*, 212 Conn. 748, 761, 563 A.2d 699 (1989) (concluding that criminal attack on plaintiff was superseding cause of plaintiff's injuries notwithstanding plaintiff's claim that defendant's allowed overgrowth of vegetation on property where attack occurred was substantial factor in both occurrence and duration of attack), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995). Nor does our conclusion necessarily affect the doctrine of superseding cause in the area of criminal law. See *State* v. *Munoz*, 233 Conn. 106, 124–25, 659 A.2d 683 (1995). We leave those questions to cases that squarely present them.

than clarify the relatively simple idea of causal connection. *When it is determined that a defendant is relieved of liability by reason of [superseding] cause, it would appear to mean simply that the negligent conduct of someone else—and not that of the defendant—is the proximate cause of the event."* (Emphasis added.) 1 T. Shearman & A. Redfield, Negligence (Rev. Ed. 1941) § 37, pp. 99–100.

Under this latter approach, the fact finder need only determine whether the allegedly negligent conduct of any actor was a proximate cause, specifically, whether the conduct was a substantial factor in contributing to the plaintiff's injuries. If such conduct is found to be a proximate cause of the plaintiff's foreseeable injury, each actor will pay his or her proportionate share pursuant to our apportionment statute, regardless of whether another's conduct also contributed to the plaintiff's injury. Put differently, the term superseding cause merely describes more fully the concept of proximate cause when there is more than one alleged act of negligence, and is not functionally distinct from the determination of whether an act is a proximate cause of the injury suffered by the plaintiff. We find this latter approach, that the doctrine of superseding cause is, in essence, a determination regarding proximate cause or causes, persuasive and hereby adopt it in our case law.

Thus, the doctrine of superseding cause no longer serves a useful purpose in our negligence jurisprudence. Historically, the doctrine reflects the courts' attempt to limit the defendants' liability to foreseeable and reasonable bounds. See W. Prosser & W. Keeton, supra, § 44, p. 302. In this regard, the doctrine of superseding cause involves a question of policy and foreseeability regarding the actions for which a court will hold a defendant accountable. This aspect of superseding cause is already incorporated in our law regarding proximate

causation.[17] As some commentators have noted, however, the doctrine was also shaped in response to the harshness of contributory negligence and joint and several liability. See T. Christlieb, "Why Superseding Cause Analysis Should Be Abandoned," 72 Tex. L. Rev. 161, 165–66 (1993). Under this reasoning, in order to avoid what some courts determined was an undue burden on the plaintiff under contributory negligence regimes, courts developed certain ameliorative doctrines, which identified some aspect of the defendant's negligent act that served as a basis for shifting the plaintiff's negligence to the defendant so that the plaintiff could recover for his losses. Id., 165. Thus, the courts sometimes labeled a defendant's negligence as an intervening act that cut off any contributory negligence of the plaintiff, which, had it not been superseded by the defendant's negligence, would have constituted a total bar to recovery. Id.

We conclude that this aspect of the doctrine of superseding cause has no place in our modern system of comparative fault and apportionment. We agree with the author of the previously cited note that it is inconsistent to conclude simultaneously that all negligent par-

[17] This court has, in prior opinions, outlined our proximate cause jurisprudence. "The second component of legal cause is proximate cause, which we have defined as [a]n actual cause that is a substantial factor in the resulting harm . . . . The proximate cause requirement tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty. . . . Remote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes. . . . In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice." (Citations omitted; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, supra, 250 Conn. 25. This definition of proximate cause implicitly includes one of the stated purposes of the doctrine of superseding cause, namely, to limit the defendant's liability to foreseeable bounds.

ties should pay in proportion to their fault, as § 52-572h requires, but that one negligent party does not have to pay its share because its negligence was somehow "superseded" by a subsequent negligent act. See id., 181. We also find persuasive the author's criticism of the Restatement (Second) method; see 2 Restatement (Second), Torts §§ 442 through 453, pp. 467–91 (1965); which looks to the nature of the subsequent negligent act to determine whether it somehow supersedes the previous act. T. Christlieb, supra, 72 Tex. L. Rev. 184. This approach gives undue prominence to the temporal order of the allegedly negligent acts. As the author aptly notes, causal contributions do not operate in neat temporal sequences; rather, most events, such as the events giving rise to the plaintiff's injury in the present case, result from a convergence of many conditions. Id., 185. The Restatement (Second) approach, then, has the potential of misleading the fact finder regarding the determination of whether each allegedly tortious act is a proximate cause of the plaintiff's injury by placing too much emphasis on the timing of the acts.

Moreover, it is no longer necessary to utilize doctrines that aid fact finders in making policy decisions regarding how to assign liability among various defendants and the plaintiff because those decisions already are inherent in our modern scheme of comparative negligence and apportionment. Thus, under the approach we adopt herein, the question to be answered by the fact finder is whether the various actors' allegedly negligent conduct was a cause in fact and a proximate cause of the plaintiff's injury in light of all the relevant circumstances. If found to be both, each actor will be liable for his or her proportionate share of the plaintiff's damages.[18]

---

[18] A similar approach, namely, that modern definitions of proximate cause, along with the advent of comparative fault regimes, render the doctrine of superseding cause unnecessary, has been followed in other texts. See M. Green, "The Unanticipated Ripples of Comparative Negligence: Superseding Cause in Products Liability and Beyond," 53 S.C. L. Rev. 1103, 1107–1108

At least two other states also have addressed the issue of whether the doctrine of superseding cause continues to play a useful role in their negligence jurisprudence after the advent of comparative fault and apportionment regimes. Because these cases illustrate aspects of the approach we adopt here today, we discuss them in detail.

In *Torres* v. *El Paso Electric Co.*, 127 N.M. 729, 732, 987 P.2d 386 (1999), the plaintiff was injured when he came into contact with a power line while replacing the roof of his employer's building. In the negligence action brought by the plaintiff against the electric company, the defendant claimed that the actions of the plaintiff, the plaintiff's employer and various other electrical contractors, constituted a superseding cause of the plaintiff's injuries that relieved the defendant of any liability. Id., 734. The jury ultimately determined that, although the defendant was negligent, its negligence was not the proximate cause of the plaintiff's injuries. Id., 733.

The New Mexico Supreme Court, in *Torres*, began its analysis of the plaintiff's appeal by explaining that New Mexico previously had adopted a pure comparative negligence system and, as a natural corollary, subsequently had abolished joint and several liability. Id., 734–35. The court went on to explain that, prior to the adoption of comparative negligence, courts had used

(2002). Green notes that the predominant approach to superseding cause requires that the harm for which a plaintiff seeks to recover be one of the harms whose risk made the defendant's conduct tortious. Id., 1120. Put differently, "[t]he defendant's liability extends to harms that came to fruition as a result of the risks that made the defendant's failure to take greater care negligent." Id. Thus, in the author's opinion, which we find persuasive, the doctrine of superseding cause is already incorporated into the test for proximate cause. Repeating the test for superseding cause, then, merely adds confusion to an already confusing subject, and serves no meaningful purpose in a jurisdiction, such as ours, wherein a defendant will be liable only for his or her proportion of the plaintiff's damages.

the doctrine of superseding cause to avoid the contributory negligence bar that some deemed to be unfair. Id., 735–36. The court determined that this application of the doctrine of superseding cause was inconsistent with New Mexico's comparative fault laws. Id., 736. Moreover, when analyzing the doctrine, the court appropriately stated: "A finding of an independent [superseding] cause represents a finding against the plaintiff on proximate cause or, in other words, a finding that the defendant's act or omission did not, in a natural and continuous sequence, produce the injury." Id. Thus, the court determined that, the doctrine was no longer appropriate in cases where the defendant alleged that the plaintiff's negligence superseded its own liability, because the use of the doctrine created an unacceptable risk that the jury would inadvertently apply the common-law rule of contributory negligence. Id.

Additionally, with respect to cases in which the superseding cause doctrine is used by defendants to attempt to shift their fault to other intervening tortfeasors, the New Mexico Supreme Court concluded that a jury instruction based on superseding cause would "unduly emphasize the conduct of one tortfeasor over another and would potentially conflict with the jury's duty to apportion fault." Id., 737. The court explained that there were cases in which the unforeseeable negligence of a third party could break the chain of causation. Id. In such a case, however, the defendant's act or omission simply would not be a proximate cause of the plaintiff's injury. Id. Because, as the New Mexico Supreme Court determined, the issue of superseding cause adds a complex layer of analysis to the jury's determination of proximate cause, the appropriate analysis is merely that of proximate cause. Id., 738. Finally, the court concluded that, "consistent with our prior cases discussing the effect of comparative negligence on traditional negligence principles, we believe that the instruction on

[superseding] cause is sufficiently repetitive of the instruction on proximate cause and the task of apportioning fault that any potential for jury confusion and misdirection outweighs its usefulness." Id. Ultimately, based on the foregoing analysis, the court determined that the doctrine of superseding cause could not apply to the defendant's acts, therefore resulting in a new trial. Id., 739.

In *Control Techniques, Inc.* v. *Johnson*, 762 N.E.2d 104 (Ind. 2002), the Indiana Supreme Court analyzed the relationship between that state's comparative fault act and the doctrine of superseding cause. In *Control Techniques, Inc.*, the plaintiff sustained serious injuries while measuring the voltage of a circuit breaker. Id., 106. The jury allocated 5 percent of the fault to the defendant. Id. On appeal, the defendant contended that the negligence of another company that had installed the circuit breaker constituted a superseding cause of the accident and foreclosed any liability on its part for defective design and manufacture. Id., 107.

After an analysis of that state's common-law doctrine of superseding cause, the court in *Control Techniques, Inc.*, concluded that the doctrines of causation and foreseeability impose the same limitations on liability as the superseding cause doctrine. Id., 108. As the court aptly noted: "Causation limits a negligent actor's liability to foreseeable consequences. A superseding cause is, by definition, one that is not reasonably foreseeable. As a result, the doctrine in today's world adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation." Id. Ultimately, the Indiana Supreme Court concluded that it was proper for the trial court to instruct only on proximate causation because the substance of the doctrine of superseding cause was fully explained in the instruction on proximate cause. Id., 110.

We find these two cases persuasive and conclude that the rationale supporting the abandonment of the doctrine of superseding cause outweighs any of the doctrine's remaining usefulness in our modern system of torts. Specifically, as the New Mexico Supreme Court determined, we believe that the instruction on superseding cause complicates what is essentially a proximate cause analysis and risks jury confusion. The doctrine also no longer serves a useful purpose in our tort jurisprudence, especially considering our system of comparative negligence and apportionment, where defendants are responsible solely for their proportionate share of the injury suffered by the plaintiff. Thus, it is no longer appropriate to give an instruction of the doctrine of superseding cause in cases involving multiple acts of negligence. Instead, under the approach we adopt herein, if the defendant was both the cause in fact and a proximate cause of the plaintiff's injury, the defendant will be liable for his or her proportionate share of the damages, notwithstanding other acts of negligence that also may have contributed to the plaintiff's injury.

This analysis leads to the conclusion that the doctrine of superseding cause should not have been presented to the jury in the present case. Upon retrial, therefore, the fact finder must determine if the defendants' manufacture and sale of a defective product was a cause in fact and a proximate cause of the plaintiffs' injuries, without reference to the doctrine of superseding cause. See also footnote 4 of this opinion.

## II

The defendants next claim[19] that the trial court improperly excluded the expert testimony concerning evidence of a "drop hammer" load test performed by

---

[19] Although our conclusion requires a new trial, we consider the parties' remaining claims to the extent they are likely to arise on retrial.

George Kyanka, an accident reconstruction expert.[20] "It is well established that [t]he trial court has broad discretion in ruling on the admissibility of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *Claveloux* v. *Downtown Racquet Club Associates*, 246 Conn. 626, 628, 717 A.2d 1205 (1998). We conclude that the trial court did not abuse its broad discretion in excluding testimony regarding the "drop hammer" test performed by Kyanka.

As this court stated in *Rullo* v. *General Motors Corp.*, 208 Conn. 74, 80, 543 A.2d 279 (1988), "[t]he admission of evidence of experiments, demonstrations, or tests . . . rests in the sound discretion of the trial court . . .

---

[20] The defendants also claim that the trial court improperly excluded evidence of the absence of prior accidents or claims involving the same model roof bracket as the one involved in the plaintiffs' accident. The plaintiffs contend that the trial court properly excluded evidence of the absence of any prior accidents or claims involving the defendants' product. Because the defendants have failed to adequately brief this claim, we decline to review it.

Practice Book § 67-4 (d) (3) requires that when a party to an appeal claims that a trial court improperly ruled on an evidentiary matter, the party's "brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." See also W. Horton & S. Cormier, Rules of Appellate Procedure (2003 Ed.) § 67-4 (5), p. 202 ("[e]videntiary rulings and the charge must be presented essentially verbatim as discussed in § 67-4 [d]").

The defendants' brief on this point, however, lacks any analysis of why the trial court improperly excluded evidence of the absence of prior accidents. Moreover, the defendants do not furnish any citation to the record, or to anywhere in the transcript, the trial court's ruling, or the defendants' claim grounds for admission of the evidence. The defendants' brief merely stated that the "[d]efendants should be permitted to present evidence of the absence of prior similar accidents or injuries involving the Model #2500 adjustable roof bracket. This evidence is relevant to the issue of whether the bracket is defectively designed and should have been admitted." The defendants then give a citation for their assertion that the evidence should have been admitted. We conclude that this is inadequate for us properly to review the trial court's ruling.

and this discretion will not be interfered with on appeal unless it is apparent that it has been abused. . . . [T]he question of the similarity of conditions prevailing at the time of the experiment or test to those which prevailed at the time of the occurrence in question is one that lies within the sound discretion of the trial court, to be decided in the light of all the surrounding facts and circumstances . . . ." (Internal quotation marks omitted.) The conditions under which testing takes place does not need to be identical, but they should be "essentially similar" to the conditions at the time of the accident. Id., 81.

The defendants claim that the "drop hammer" test established that the damage done to the roof bracket found on the ground near where the plaintiffs fell was caused as a result of the collapse, rather than, as the plaintiffs claimed, that it was the original cause of the collapse. The plaintiffs, in their motion in limine to exclude the evidence, asserted that the conditions under which the testing was performed were not sufficiently similar to the conditions to which the bracket was subjected on the day of the plaintiffs' accident. The trial court agreed and excluded the evidence. Specifically, the court determined that the ground on which the bracket was found was not sufficiently similar to the flat steel surface on which Kyanka performed the test. Although the conditions of the test do not have to be identical to the conditions under which this accident occurred, we see nothing in the record that rises to the level of abuse of discretion. The trial court's exclusion of Kyanka's "drop hammer" test was, therefore, not improper.

The defendants next claim that the trial court improperly denied their motion to bifurcate the liability and damages portions of the trial. Pursuant to General Stat-

utes § 52-205[21] and Practice Book § 15-1,[22] the trial court may order that one or more issues that are joined be tried before the others. "The interests served by bifurcated trials are convenience, negation of prejudice and judicial efficiency. . . . Bifurcation may be appropriate in cases in which litigation of one issue may obviate the need to litigate another issue." (Citation omitted.) *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 243 Conn. 401, 423, 703 A.2d 1132 (1997). The bifurcation of trial proceedings lies solely within the discretion of the trial court. Id. Nothing in the record here persuades us that the trial court abused its broad discretion.

### III

Finally, the defendants claim that the trial court improperly granted DeLuca's motion for summary judgment. DeLuca, in its intervening complaint, asserted a claim against the defendants seeking to recover the amounts that it had paid to the plaintiffs in workers' compensation benefits. The defendants, by way of counterclaim, alleged that DeLuca owed them a duty of indemnification for all costs arising out of the plaintiffs' claims. The trial court rendered summary judgment for DeLuca on the defendants' counterclaim.

The defendants contend that an independent legal relationship existed between the defendants and DeLuca by virtue of an implicit agreement that the use of the roof brackets purchased by DeLuca would be in compliance with OSHA regulations. Additionally, the defendants assert, DeLuca breached that independent

---

[21] General Statutes § 52-205 provides: "In all cases, whether entered upon the docket as jury cases or court cases, the court may order that one or more of the issues joined be tried before the others."

[22] Practice Book § 15-1 provides in relevant part: "In all cases, whether entered upon the docket as jury cases or court cases, the judicial authority may order that one or more of the issues joined be tried before the others. . . ."

legal duty by, inter alia, failing to provide additional fall protection for the plaintiffs while working on the New Canaan Nature Center roof. DeLuca moved for summary judgment, claiming that the defendants' claim for indemnification was barred by the exclusive remedy provisions of the Workers' Compensation Act, General Statutes § 31-284. The court granted DeLuca's motion, stating that "[t]he defendant[s] . . . fail, however, to cite any authority recognizing a duty arising under OSHA that may be imposed on a plaintiff's employer for the benefit of manufacturers or distributors sued for personal injury allegedly sustained from on-the-job use of an alleged defective product." We agree with the trial court and affirm the judgment granting DeLuca's motion for summary judgment.

The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." *LaFlamme* v. *Dallessio*, 261 Conn. 247, 250, 802 A.2d 63 (2002).

Section 31-284 provides that an employer that complies with the requirements of the workers' compensation laws shall not be liable for any action for damages on account of personal injuries sustained by an employee arising out of and in the course of employ-

ment.[23] "Under the Workers' Compensation Act, both the employer and the employee have relinquished certain rights to obtain other advantages. The employee no longer has to prove negligence on the part of the employer, but, in return, he has to accept a limited, although certain, recovery. . . . The employer, in turn, guarantees compensation to an injured employee in return for the exclusivity of the workers' compensation liability to its employees." (Citation omitted.) *Bouley* v. *Norwich*, 222 Conn. 744, 752, 610 A.2d 1245 (1992).

Because of the importance of the exclusivity provisions of the Workers' Compensation Act, this court has limited a third party's right to seek indemnification from an employer to those situations where there is an independent legal relationship between the third party and the employer, thereby generating a legal duty from the employer to the third party seeking indemnification. *Ferryman* v. *Groton*, 212 Conn. 138, 144–45, 561 A.2d 432 (1989). In *Ferryman*, we stated that a third party's right to seek indemnity from an employer is "clear when the obligation springs from a separate contractual relation, such as an employer-tenant's express agreement to hold the third-party landlord harmless, or a bailee's

---

[23] General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

obligation to indemnify a bailor, or a contractor's obligation to perform his work with due care; but when the indemnity claim rests upon the theory that a primary wrongdoer impliedly promises to indemnify a secondary wrongdoer, the great majority of jurisdictions disallow this claim." (Internal quotation marks omitted.) Id., 145.

This court addressed similar allegations in *Therrien* v. *Safeguard Mfg. Co.*, 180 Conn. 91, 429 A.2d 808 (1980). In *Therrien*, an employee brought an action against a product manufacturer that allegedly had manufactured a defective machine guard. Id., 93. The manufacturer subsequently filed a third party complaint against the plaintiff's employer claiming that the employer owed the manufacturer a duty to maintain and inspect the guard properly. Id., 94. This court affirmed the trial court's grant of the employer's motion to strike, concluding that "[t]he law does not independently impose a quasi-contractual duty upon a buyer to indemnify a manufacturer for injuries sustained by the buyer's employees in the use of a defective product." Id., 95.

On the basis of the principles we articulated in *Therrien*, we conclude that an implied agreement to abide by OSHA regulations does not create any independent legal duty owed by DeLuca to the defendants. Furthermore, even if such a duty were to have existed, it would not give rise to a duty of indemnification that would circumvent the exclusivity provisions of the Workers' Compensation Act. We, therefore, affirm the trial court's grant of summary judgment rendered in favor of DeLuca.

The judgment for the defendants is reversed and the case is remanded for a new trial; the judgment is affirmed with respect to the granting of DeLuca's motion for summary judgment.

In this opinion the other justices concurred.