******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring. I agree with the majority's well reasoned opinion and the result it reaches. I write separately for two reasons. First, and most significantly, I am troubled by the unnecessary and unfortunate prolixity of our superseding cause doctrine, or what remains of it. I understand that the majority is unable completely to escape the gravitational pull of existing doctrine, because the court's ability to chart a new course, even with respect to the common law, is constrained by the arguments raised by the parties, who themselves are constrained by the perceived limitations imposed by our own precedent. In my view, the majority opinion nonetheless makes progress, incomplete but not insignificant, toward a more sensible and simplified doctrine. This concurring opinion primarily is intended to highlight the particular aspects of the majority opinion that I believe can be built on in future cases so that the job of doctrinal reconstruction might be completed. The second reason I write is to note my disagreement with two minor points contained in the majority opinion.

I

The confusion generated by the superseding cause doctrine is easier to identify than to resolve. Causation, while a simple everyday word, is by no means a simple concept, in law or elsewhere, and its application to various questions of legal liability and damages has vexed our profession for at least the past one hundred years.[1] That vexation is reflected in an unruly doctrine marked by a proliferation of varying, partly overlapping, and partly incommensurable verbal formulations, none of which quite satisfies the powerful desire to capture the elusive concept in words.[2] The doctrine of superseding cause is marked by this confusion, and the tradition of stacking one unsatisfactory formulation on top of another has resulted in a jury instruction that requires an advanced degree in logic and linguistics to understand. A jury is subjected to wave after wave of abstractions like foreseeability, scope of the risk, proximate cause, substantial, material, trivial, relatively insignificant, and inconsequential causes, concurrent causes, overpowering events, and so forth, connected by unhelpful transitional phrases such as "[i]n other words," "[t]hat is," and "[t]o put it another way." It does no one any good to perpetuate a doctrine of this character.

The majority has done admirable work clarifying doctrinal connections, resolving doctrinal tensions, sorting through conflicting authorities, and bringing the light of common sense to its subject matter. Yet even after that work has been accomplished, the reader would be forgiven if he or she feels unprepared to submit a model

jury instruction to replace Connecticut Civil Jury Instruction 3.1-5. If the doctrine remains challenging for lawyers and judges, moreover, one can only imagine what a lay jury will make of it. Perhaps the guidance provided by the majority opinion will help produce more reliable trial outcomes in the future than the verdict in the present case.[3] As I have indicated, I believe that the majority has laid the groundwork to assist in the reconstruction of a simplified and more coherent doctrine. I wish to identify three principles in particular that may be especially useful in that endeavor.

First, the majority has clarified that the fundamental principle animating the doctrine of superseding cause is that a negligent actor will not be relieved of liability by the intervention of another force—in most cases, the reckless or intentional misconduct of a third party—if the type of harm sustained by the plaintiff is within the scope of the risk that made the actor's conduct negligent. This basic insight, in my opinion, best identifies the critical operative principle underlying the doctrine of superseding cause in terms that can be understood and applied without inordinate difficulty. As the majority notes, the Restatement (Third) of Torts evidently has reached this conclusion in its treatment of superseding cause by abandoning the traditional doctrine in favor of an analysis fundamentally based on a scope of the risk analysis. See footnote 12 of the majority opinion; see also 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 34, p. 569 (2010).[4] My preliminary view, as yet untested in the adjudicatory setting in Connecticut to the best of my knowledge, is that the reformulated approach to causation set forth in the Restatement (Third) may hold promise. Time will tell.

Second, just as under ordinary negligence rules, the defendant is liable for harm as long as his or her negligence was a substantial factor in producing it, even if the defendant did not foresee, nor reasonably could have foreseen, the extent of the harm or the particular manner in which it occurred.[5] Thus, for example, the fact that the harm is brought about by the criminal or reckless act of a third party will not cut off the negligent party's liability if harm of the same general nature is within the scope of the risk that made the party's act or omission negligent. See footnotes 17 and 18 and accompanying text of the majority opinion; see also footnote 3 of this concurring opinion; 2 Restatement (Second), Torts § 442 B, p. 469 (1965). This principle serves as a complement to the one discussed in the preceding paragraph because its application also hinges on the scope of the risk. The principle is important in the present context because intervening intentional or reckless conduct not infrequently results in harm that may be unusual in degree or manner of infliction but nevertheless is within the scope of the risk that made the actor negligent. See 2 Restatement (Second), supra,

§§ 448 and 449, pp. 480–484; see also 1 Restatement (Third), supra, § 34, comment (d), p. 572.

Third, the possibility remains that the explicit equivalency the majority emphasizes between the doctrines of superseding cause and sole proximate cause may contain the seed for future development of a simplified doctrine. The majority makes a persuasive case that this court's repeated references to superseding cause as equivalent to sole proximate cause is not the result of loose language but actually means what it says: if a third party's conduct amounts to a superseding cause of a plaintiff's harm, then it is the sole proximate cause of that harm, and the negligent defendant is not a proximate cause at all. The question therefore arises why the superseding cause doctrine is needed at all, that is, why not simply ask the jury in such a case whether the intervening force was the sole proximate cause of the harm? It seems to me that this is a question worth asking, although I have no view about how it should be answered because it was neither raised nor briefed by the parties.[6]

## II

My disagreement with the majority involves two minor aspects of its opinion. First, I see no reason to engage in the analysis appearing in footnote 10 of the majority opinion, which contains an extensive, and I believe unnecessary, discussion regarding *Archambault* v. *Soneco/Northeastern, Inc.*, 287 Conn. 20, 946 A.2d 839 (2008). *Archambault* involved the unusual situation in which there were two potentially negligent actors responsible for the plaintiff's injuries, but one of them, the plaintiff's employer, could not be brought into the case for apportionment purposes because it enjoyed immunity from liability under the exclusivity provision of the Workers' Compensation Act.[7] Id., 26; see General Statutes § 31-284 (a). This court held that the defendant, although precluded from seeking apportionment against the nonparty employer, was entitled to point to the employer as the sole proximate cause of the plaintiff's harm; *Archambault* v. *Soneco/Northeastern, Inc.*, supra, 37–41; but was not entitled to invoke the doctrine of superseding cause to accomplish the same purpose under this court's holding in *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 820 A.2d 258 (2003). *Archambault* v. *Soneco/Northeastern, Inc.*, supra, 41–45. The majority criticizes this aspect of *Archambault* on the ground that its holding (1) relies on a misreading of *Barry*, (2) conflicts with this court's subsequent holding in *Sapko* v. *State*, 305 Conn. 360, 377, 44 A.3d 827 (2012), which held that the doctrine of superseding cause was applicable to a claim brought under the Workers' Compensation Act, and (3) creates a doctrinal "distinction without a difference" because the permitted defense of sole proximate cause and the precluded defense of superseding cause essentially

mean the same thing. See footnote 10 of the majority opinion.

My concern here is not with the substance of the majority's criticism of the *Archambault* analysis as it relates to *Barry* and the doctrines of sole proximate cause and superseding cause; it seems clear to me that *Archambault* misreads *Barry*. My point, rather, is that the current status of *Archambault* is not before us, and the context of that case is sufficiently unusual that I do not believe that we should suggest any corrections to its holding until we are presented with a live controversy raising the particular issues and considerations implicated by that unusual setting. Perhaps, as the majority appears to suggest, *Archambault* went off course by holding that the defendant was not entitled to raise a defense on the basis of superseding cause. But there are other possibilities as well, and I believe that we should not indicate a view on the subject in the present case because the scenario in *Archambault* is different and may be sui generis; see footnote 6 of this concurring opinion; and because the proper treatment of that scenario has not been briefed by the parties.

Second, although I agree with the majority's conclusion that the existing model civil jury instruction on superseding cause; see Connecticut Civil Jury Instructions 3.1-5, available at http://www.jud.ct.gov/JI/Civil/Civil.pdf (last visited August 5, 2019); provides an erroneous statement of the law and, therefore, does not assist the plaintiff's argument, I wish to add my gloss to ensure that the majority's message is not misunderstood as a wholesale disavowal of the model instructions. Although the model civil jury instructions are "not intended to be authoritative"; *Snell* v. *Norwalk Yellow Cab, Inc.*, 172 Conn. App. 38, 66, 158 A.3d 787 (2017); in the sense that they come with no guarantee of infallibility, we also must acknowledge and embrace the fundamental fact that, as a matter of routine practice around the state, the model instructions are heavily relied on by trial lawyers and judges in most cases, certainly those garden variety cases being tried every day in virtually every courthouse hosting civil jury trials. In my view, the reminder of fallibility served today should not be understood to convey the view that the model instructions generally are unreliable, or that we lack confidence in them, or that the instructions should not continue to be relied on by trial lawyers and judges as containing an accurate statement of the law. The instructions are promulgated by a distinguished panel of committee members who have undertaken the Sisyphean task of synthesizing and articulating the law governing a broad variety of civil cases in a form readily understandable to a lay jury. They provide commendable guidance. But precisely because the task is so difficult—the law is not always certain, nor is it static, nor is it always produced or pronounced in "one size

fits all" formulations—it is fair to suggest that trial lawyers are well advised to "trust but verify" these model instructions to ensure that they are correct, current, and properly crafted to fit the particular case at hand. This case presents one of those highly unusual situations in which one of our model civil jury instructions contains an error and, thus, illustrates why eternal vigilance is the watchword of our sometimes unforgiving profession. Fortunately, the inaccuracy was of no practical consequence here, because the parties did not rely on Connecticut Civil Jury Instruction 3.1-5 governing superseding cause at trial, and the trial court did not issue the inaccurate instruction. Going forward, the bench and bar are on notice of the inaccuracy contained in the existing version of Connecticut Civil Jury Instruction 3.1-5, and, undoubtedly, the Civil Jury Instruction Committee will rectify the inaccuracy by promulgating a new and improved version in due course.

I respectfully concur.

[1] See W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 41, pp. 263–64 ("There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion [than the issue of causation]. Nor, despite the manifold attempts [that] have been made to clarify the subject, is there yet any general agreement as to the best approach. Much of this confusion is due to the fact that no one problem is involved, but a number of different problems, which are not distinguished clearly, and that language appropriate to a discussion of one is carried over to cast a shadow upon the others." [Footnote omitted.]); id., p. 263 n.1 (citing authorities "attempt[ing] . . . to clarify the subject").

[2] The overwrought treatment of superseding cause contained in the Restatement (Second) of Torts—which devotes no less than fifteen separate sections to the topic—illustrates the point. See 2 Restatement (Second), Torts §§ 440 through 453, pp. 465–91 (1965); see also part I of the majority opinion (discussing relevant provisions of the Restatement [Second]). The Restatement (Third) of Torts contains a far more concise treatment of the topic. See 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 34, p. 569 (2010). The question of whether to adopt the principles set forth in the Restatement (Third) of Torts is not presently before us. See footnote 12 of the majority opinion.

[3] I intend no criticism of the trial court or the jury in this case. The record demonstrates that the trial court did its best under difficult conditions to fashion a coherent jury instruction and useful jury interrogatories from the assorted pieces of the doctrinal jigsaw puzzle remaining in disarray on the table since tort reform was enacted; see Public Acts 1987, No. 87-227; Public Acts 1986, No. 86-338; and *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 820 A.2d 258 (2003), was decided.

[4] Section 34 of the Restatement (Third) of Torts addresses the specific topic of superseding cause, but it must be read in conjunction with several other provisions of the Restatement (Third) that establish and explain the relevant principles of causation. See, e.g., 1 Restatement (Third), supra, § 29, p. 493 ("[a]n actor's liability is limited to those harms that result from the risks that made the actor's conduct [negligent]"). To be clear, although I believe that a transition to a "scope of the risk" analysis would simplify and clarify the superseding cause doctrine, such a modification would not eliminate all of the complexities and difficulties that arise in these cases. The primary remaining challenge is to determine the "appropriate level of generality or specificity to employ in characterizing the type of harm" that is within the scope of the risk or risks that made the actor negligent. Id., comment (i), p. 504 (entitled "Understanding and characterizing the risk of harm"); see also id., § 34, comments (d) and (e), pp. 572–74.

[5] See, e.g., *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 323, 107 A.3d 381 (2015); *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 333, 430 A.2d 1 (1980); 2 Restatement (Second), supra, § 435 (1), p. 449; see also, e.g., Connecticut Civil Jury Instructions 3.1-4, available at http://www.jud.ct.gov/JI/civil/civ-

il.pdf (last visited August 5, 2019) (entitled "Proximate Cause—Foreseeable Risk").

[6] In *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 820 A.2d 258 (2003), this court determined that the superseding cause doctrine no longer serves a useful purpose in cases involving claims of negligence against multiple defendants, because "our system of comparative negligence and apportionment [ensures that] defendants are responsible solely for their proportionate share of the injury suffered by the plaintiff." Id., 446. We concluded that "the [jury] instruction on superseding cause complicates what is essentially a proximate cause analysis and risks jury confusion." Id. Whether an analogous argument could be made in the present context—i.e., that the sole proximate cause doctrine accomplishes the same result as the superseding cause doctrine, but with less confusion—is an open question. See, e.g., 1 Restatement (Third), supra, § 34, comment (f), p. 574 (opining that sole proximate cause is "a term best avoided" in this context).

[7] I call the *Archambault* situation unusual because it falls between the cracks of the otherwise comprehensive apportionment scheme set forth in the comparative fault statute, General Statutes § 52-572h. On the one hand, unlike the nonparty intentional tortfeasors in the present case, the potentially at-fault nonparty in the *Archambault* scenario is not expressly excluded from the apportionment scheme pursuant to § 52-572h (o), because the claim against the plaintiff's employer, if it could be brought, would be based on a theory of negligence. On the other hand, the potentially at-fault nonparty in *Archambault* is not subject to apportionment as a "settled or released [person]" pursuant to §§ 52-572h (f) (4) and (n).

———————————————