RICHARD ARCHAMBAULT *v.* SONECO/
NORTHEASTERN, INC., ET AL.
(SC 17845)

Norcott, Katz, Palmer, Zarella and Schaller, Js.

Argued October 16, 2007—officially released May 20, 2008

*Wesley W. Horton,* with whom were *Michael S. Taylor, Barry P. Beletsky* and, on the brief, *Daniel J. Krisch* and *Chip G. Schoneberger,* pro hac vice, for the appellant (defendant Konover Construction Corporation).

*Robert I. Reardon, Jr.*, with whom were *Robert T. Rimmer* and *Tracy P. Montalbano*, for the appellee (plaintiff).

*Anthony J. Natale, Richard F. Wareing* and *Colin P. Mahon* filed a brief for the Construction Management Association of America, Southern New England Chapter, et al., as amici curiae.

*Raymond A. Garcia, Jane I. Milas* and *James E. Regan* filed a brief for the Connecticut Building Congress as amicus curiae.

*Norman Zolot* filed a brief for the International Union of Operating Engineers, Local 478, as amicus curiae.

*Robert M. Cheverie* filed a brief for the Connecticut Building and Construction Trades Council, AFL-CIO, as amicus curiae.

*Robert T. Rimmer* filed a brief for the Mechanical Contractors Association of Connecticut as amicus curiae.

*William F. Gallagher* and *Hugh D. Hughes* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

ZARELLA, J. In this action seeking damages for personal injuries sustained in a construction accident, the defendant Konover Construction Corporation (Konover), general contractor for the construction project, appeals from the judgment of the trial court rendered in favor of the plaintiff, Richard Archambault. The plaintiff was employed as an excavator by the named defendant, Soneco/Northeastern, Inc. (Soneco), a subcontractor hired by Konover to perform site work on the project, when a trench that he had been excavating collapsed and caused him serious physical injuries. Konover claims that the trial court improperly (1) precluded

it from introducing evidence that Soneco's negligent conduct was the sole proximate cause of the plaintiff's injuries, (2) declined its request to instruct the jury that Soneco's conduct was a superseding cause of the plaintiff's injuries, and (3) instructed the jury that Konover owed the plaintiff a nondelegable duty to keep the construction site safe. Konover also claims that the plaintiff's counsel exploited the trial court's rulings and improperly appealed to the jurors' passions and prejudices during closing argument. We reverse the judgment of the trial court and order a new trial.

The following facts and procedural history are relevant to our resolution of this appeal. On the morning of October 30, 1998, the plaintiff was excavating a trench for the installation of a water line on a construction site[1] when a portion of the trench collapsed, burying another worker, James Dowd. The plaintiff jumped out of the excavator and into the trench in an attempt to assist Dowd, but, while there, another portion of the trench collapsed, burying the plaintiff and a third worker, Dubie Sowell.[2] The plaintiff and Sowell ultimately were rescued but sustained serious physical injuries as a result of the accident.

On July 16, 1999, the plaintiff filed a complaint against Konover and Soneco. Count one of the complaint alleged that the plaintiff's injuries had been caused by Soneco's intentional and reckless misconduct and its violation of multiple regulations promulgated under the authority of the federal Occupational Safety and Health

---

[1] The project involved the construction of a BJ's Wholesale Club outlet.

[2] Sowell also filed an action against Konover and Soneco. On February 25, 2000, the court, *Martin, J.*, granted the plaintiff's motion to consolidate the cases for trial. Following jury verdicts in favor of the plaintiff and Sowell, Konover appealed from both judgments but withdrew its appeal as to Sowell on May 22, 2007.

Administration.[3] Count two alleged negligence against

---

[3] The operative complaint is the plaintiff's amended complaint dated October 30, 2000. Count one, paragraph five, of the complaint specifically alleges that Soneco:

"a. refused to provide an[y] trench boxes or other cave-in protection for employees engaged in trenching operations, such as the plaintiff, when it knew that such protection was required by law and necessary to protect the plaintiff from injury or death;

"b. failed to require trench boxes or other cave-in protection for employees engaged in trenching operations, such as the plaintiff, when it knew that such protection was required by law and necessary to protect the plaintiff from injury or death;

"c. ordered the plaintiff to excavate trenches when it knew that such work was dangerous and hazardous under the circumstances;

"d. failed to provide trench boxes or other safety equipment in order to save money and time and speed productivity;

"e. ordered the plaintiff to excavate trenches without providing trench boxes or sufficient space to step or slope the trench walls so as to prevent cave-ins;

"f. knew that said trench had a high probability of collapse and failure due to soil conditions consisting of loamy sand;

"g. violated 29 C.F.R. § 1926.651 (c) (2) by failing to provide a safe means of egress from trench excavations;

"h. violated 29 C.F.R. § 1926.651 (h) by allowing employees to work in excavations in which water accumulated and failed to protect its employees from hazards associated with water accumulation, such as cave-ins;

"i. violated 29 C.F.R. § 1926.651 (j) (1) by failing to provide its employees adequate protection from hazardous loose rock or soil, such as scaling to remove loose material, installation of protective barricades as necessary to stop and contain falling material, or other means of equivalent protection;

"j. violated 29 C.F.R. § 1926.651 (j) (2) by failing to provide its employees protection from excavated material, failing to place or require the placement of such materials at least two feet from the edge of the excavations, and/or failing to use retaining devices sufficient to prevent materials from falling or rolling into excavations;

"k. violated 29 C.F.R. § 1926.651 (k) by failing to provide a competent person to perform daily inspections of excavations, adjacent areas, and protective systems for evidence of hazardous situations, such as possible cave-ins, and failing to inspect for said dangers;

"l. violated 29 C.F.R. § 1926.652 (a) by failing to select or construct sloping and benching systems in accordance with 29 C.F.R. § 1926.652 (b); and by failing to select and construct support systems, shield systems, and/or other protective systems in accordance with 29 C.F.R. § 1926.652 (c);

"m. failed to ensure cave-in protection was provided for each employee working in a trench that exceeded six feet in depth, including the plaintiff;

"n. failed to adequately train its employees in good construction practices;

Konover[4] for breach of its nondelegable duty to provide a safe work site by failing to ensure safe working conditions, to oversee the work site adequately, to supervise its independent contractors and their employees adequately, to inspect the work site and to enforce compliance with the applicable safety regulations in a proper manner. Konover denied the allegations of negligence and asserted a special defense of the plaintiff's contributory negligence.

"o. failed to properly train and supervise its employees to ensure safe excavating practices;

"p. failed to ensure safe working conditions for employees engaged in trenching operations in accordance with applicable federal regulations;

"q. failed to ensure safe working conditions for employees engaged in trenching operations when it knew that a cave-in could result in severe injury to or death of its employees, such as the plaintiff;

"r. failed to provide cave-in protection for its employees after and despite a citation by the Occupational Safety and Health Administration . . . for a similar safety violation on October 6, 1998, at a job site on Route 80 in front of Ames Department Store in East Haven . . .

"s. intentionally failed to provide cave-in protection for employees engaged in trenching operations when it was both required and feasible to do so;

"t. intentionally failed to provide cave-in protection for employees engaged in trenching operations, despite a high risk of injury or death of its employees, including the plaintiff, in order to accelerate productivity and achieve greater profits."

[4] Count two, paragraph seven, of the complaint alleges that Konover:

"a. failed to provide or require cave-in protection for workers engaged in trenching operations, despite a high risk of injury to or death of said workers on its job site, such as the plaintiff, in order to accelerate productivity and achieve greater profits;

"b. rushed the job for greater profits, thereby jeopardizing the safety of the work force, including the plaintiff;

"c. failed to ensure safe working conditions at the job site when, as the general contractor, it had a nondelegable duty to do so;

"d. failed to adequately inspect the work site to ensure safe working conditions existed;

"e. failed to adequately supervise its independent contractors and their employees, including the plaintiff, to ensure compliance with all applicable federal and state regulations, including 29 C.F.R. § 1926.651 (c) (2), 29 C.F.R. § 1926.651 (h), 29 C.F.R. § 1926.651 (j) (1), 29 C.F.R. § 1926.651 (j) (2), 29 C.F.R. § 1926.651 (k), and 29 C.F.R. § 1926.652 and [Regs., Conn. State Agencies] § 31-372-107-1926; and

"f. failed as general contractor of the work site to enforce compliance with said applicable state and federal regulations and good excavating practices."

On July 13, 2001, Soneco filed a motion for summary judgment, which the plaintiff opposed, on the ground that the plaintiff's claims were barred by the exclusive remedy provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., and that the plaintiff had failed to establish a genuine issue of material fact sufficient to bring the claims within the exception to the act's exclusivity provision. Under the exception, a plaintiff may maintain an action against an employer if the injuries were inflicted by another employee identified as the employer's alter ego and if the other employee intended the act and the injurious consequences thereof or knew that the injuries were substantially certain to result from the intentional acts. See *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 275, 280, 698 A.2d 838 (1997). Thereafter, the trial court concluded that the plaintiff's claim did not fall within the exception and granted Soneco's motion for summary judgment.

On April 16, 2002, Konover filed a motion for summary judgment on the grounds that it had no legal duty to the plaintiff and there was no evidence to support the plaintiff's allegations of negligence. On May 31, 2002, the trial court denied the motion, concluding that "there remain[ed] triable issues of fact" with respect to Konover's alleged negligence and the question of whether it had a duty, or had assumed a duty, to supervise safety at the work site. The trial court also denied Konover's subsequent motion for reargument and reconsideration.

On March 30, 2005, the plaintiff withdrew his complaint against Soneco. On April 13, 2005, prior to the start of the trial, the plaintiff filed a motion in limine, seeking to preclude Konover from introducing evidence of negligent conduct by Soneco or from arguing that Soneco's conduct had caused the plaintiff's injuries. The plaintiff also moved to dismiss Soneco, which had intervened in the action as a plaintiff on May 8, 2000,

seeking reimbursement for workers' compensation benefits that it had paid or would become obligated to pay to the plaintiff from any damages that the plaintiff would be entitled to recover against Konover. The trial court granted the plaintiff's motion to dismiss Soneco on the ground of default and his motion to preclude Konover from presenting evidence of Soneco's alleged misconduct for the purpose of demonstrating that the negligence of Soneco, rather than Konover, had been the sole proximate cause of the plaintiff's injuries. The trial court nonetheless allowed Konover to introduce evidence of Soneco's responsibilities under its contract with Konover, including Soneco's duty to supervise the excavation work, to ensure compliance with OSHA safety regulations and to provide mechanical safeguards and protective devices. It did not permit the introduction of evidence or argument, however, that Soneco had breached those duties, that Soneco's breach of duties had caused the plaintiff's injuries or that Soneco had been negligent. The court concluded that "the empty chair cannot be blamed unless the empty chair is a party of some sort."

During closing argument, the plaintiff's counsel claimed that Konover had a nondelegable duty to provide a safe work site and that it could not assign that duty to anyone else, including Soneco.[5] Thereafter, the

---

[5] The plaintiff's counsel argued in relevant part: "[T]he defense . . . alluded several times to the conduct of Soneco. There were plenty of objections every time [the defense] tried. They speak of duty of Soneco. Well, the court is going to give you a very important instruction . . . about which I ask you pay particular attention. I believe the court will instruct you that the duty of Konover as a general contractor is what we call a nondelegable duty. . . . [L]isten to that part of the instruction, please. It's a nondelegable duty that Konover has to protect and provide a safe job site to all. . . . [T]hat means it's a duty . . . that cannot be passed on . . . to Soneco . . . . No matter what the defense argues about duties . . . Konover is not allowed to pass [its] duty onto anyone else . . . .

\* \* \*

"The duty here is nondelegable. At Konover's doorstep, that buck stops. It can't be passed on by mention of duties of Soneco or duties of [others].

**28**

court instructed the jury, over Konover's objection, that Konover had a nondelegable duty to ensure safety on the work site.[6] The court also charged the jury on Konover's duties as the controlling employer under the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 651 et seq., but declined Konover's request to charge the jury on Soneco's duties under OSHA and the issue of superseding or sole proximate cause.[7] Upon the plaintiff's subsequent request to supplement the jury charge, which Konover opposed, the court instructed in relevant part: "I have these additional comments to make in regard to [the] concept [of legal cause]. [Konover] is the only defendant in this case. You've heard evidence that the [plaintiff was] employed by the subcontractor, [Soneco]. You've heard testimony regarding [Soneco]. You need to keep in mind that [Soneco] is neither a plaintiff nor a defendant in this case. That is to say it is not a party. That means, when you retire to consider the testimony that you have heard and the evidence that you have seen during this trial, you may not consider any of the actions taken by [Soneco] or [its] failure to take action in rendering your verdict. You may not, under any circumstances, hold

. . . [I]t cannot be delegated, and that's the law. You're obligated to follow the law here. Soneco is not in this courtroom. Konover is. [It] had a nondelegable duty. [It] failed it."

[6] In its supplemental preliminary request to charge, Konover had asked the court to instruct the jury that Konover owed the plaintiff a lesser duty of reasonable care to prevent and detect safety violations on the job site than Soneco. The trial court nonetheless instructed: "[Konover] has not contested that it had overall control of safety on the job site. The court therefore instructs you that, as a matter of law, Konover had a nondelegable duty concerning safety, that it could not assign it to someone else and that such duty extended to all workers on the site including the [plaintiff]."

[7] Konover had requested a charge on superseding cause in its request to charge, but the court declined to give it, explaining that, "[although] it is correct that other types of employers have duties under OSHA, given the [case of *Durniak* v. *August Winter & Sons, Inc.*, 222 Conn. 775, 610 A.2d 1277 (1992)], if I were to give such an instruction, I would then have to give a lengthy instruction about apportionment and how it does not apply to this case. It was for that reason that the court determined not to specifically instruct as to the obligations of the plaintiff's . . . direct employer, Soneco."

[Soneco] liable for any portion of this accident or attribute any fault whatsoever to Soneco. . . . You should not consider whether the conduct of any Soneco employee other than [the plaintiff] contributed in any way to the cave-in or the plaintiff's injuries and damages. You are only . . . to determine whether the employees of Konover were at fault here, and the conduct of Soneco employees other than [the plaintiff] is not to be considered in determining liability or the amount of damages."

On May 5, 2005, the jury found in favor of the plaintiff, concluded that Konover was 100 percent at fault and awarded the plaintiff $3,450,000 in damages. The trial court accepted the verdict and, on January 17, 2006, denied Konover's motion to set aside the verdict and for a new trial on all issues. The court also denied Konover's two alternative motions for a new trial on damages alone and for a remittitur. In sustaining the jury's verdict and denying Konover's motions, the trial court explained that the record contained adequate and credible evidence to support the jury's determination of damages and that the jury's verdict was not excessive. The trial court also concluded, in addressing four specific claims made by Konover in support of its motions, that it properly had (1) granted the plaintiff's motion in limine to preclude Konover from introducing evidence regarding Soneco's alleged negligence on the ground that Soneco was not a party, (2) instructed the jury that Konover had a nondelegable duty to ensure safety on the job site and was the controlling employer pursuant to OSHA, (3) declined to instruct the jury that Soneco's conduct on the job site was a superseding cause of the plaintiff's injuries,[8] and (4) determined that the jury's

[8] The trial court explained that it did not give the requested charge because this court had abrogated the doctrine of superseding cause in *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 441–42, 820 A.2d 258 (2003), and because Soneco "was not a party at the time of the trial and, under the relevant statutory scheme, was not an entity from which [Konover] could seek to apportion any damages awarded."

verdict did not result from passion, prejudice or improper considerations. This appeal followed.

I

Konover first claims that the trial court improperly precluded evidence and argument as to Soneco's negligent conduct on the ground that Soneco was not a party, thereby preventing the jury from considering Soneco's negligence as the sole proximate cause of the plaintiff's injuries. Konover specifically claims that the case law of Connecticut and other jurisdictions supports the view that a defendant proceeding under a general denial in a negligence action always is entitled to introduce evidence negating the causation element of the plaintiff's prima facie case, even when such evidence is that of an employer's negligence and the employer is not a party. The plaintiff responds that Konover's claim is not supported by Connecticut case law and, furthermore, that evidence of a nonparty's negligence may not be adduced at trial pursuant to General Statutes §§ 52-572h[9] and 52-

[9] General Statutes § 52-572h provides in relevant part: "(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section. . . .

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant.

102b.[10] We agree with Konover.

We first set forth the legal principles that govern our review. "The scope of our appellate review depends

* * *

"(n) A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section. . . ."

[10] General Statutes § 52-102b provides in relevant part: "(a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. . . . The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

"(b) The apportionment complaint shall be equivalent in all respects to an original writ, summons and complaint . . . . The apportionment defendant shall have available to him all remedies available to an original defendant including the right to assert defenses, set-offs or counterclaims against any party. . . .

"(c) No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h. If a defendant claims that the negligence of any person, who was not made a party to the action, was a proximate cause of the plaintiff's injuries or damage and the plaintiff has previously settled or released the plaintiff's claims against such person, then a defendant may cause such person's liability to be apportioned by filing a notice specifically identifying such person by name and last known address and the fact that the plaintiff's claims against such person have been settled or released. Such notice shall also set forth the factual basis of the defendant's claim that the negligence of such person was a proximate cause of the plaintiff's injuries or damages. No such notice shall be required if such person with whom the plaintiff settled or whom the plaintiff released was previously a party to the action.

"(d) Notwithstanding any applicable statute of limitation or repose, the plaintiff may, within sixty days of the return date of the apportionment complaint served pursuant to subsection (a) of this section, assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint.

"(e) When a counterclaim is asserted against a plaintiff, he may cause a

[on] the proper characterization of the rulings made by the trial court." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000). In the present case, we are required to decide whether the trial court applied the correct legal standard in determining that Konover was prohibited from establishing that Soneco's negligence was the sole proximate cause of the plaintiff's injuries. Our review is therefore plenary. See, e.g., *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 29, 930 A.2d 682 (2007). With respect to the element of causation, "a plaintiff must establish that the defendant's conduct legally caused the injuries, that is, that the conduct both caused the injury in fact and proximately caused the injury. . . .

"The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The test of proximate cause is whether the defendant's

person not a party to the action to be brought in as an apportionment defendant under circumstances which under this section would entitle a defendant to do so.

"(f) This section shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action.

"(g) In no event shall any proportionate share of negligence determined pursuant to subsection (f) of section 52-572h attributable to an apportionment defendant against whom the plaintiff did not assert a claim be reallocated under subsection (g) of said section. Such proportionate share of negligence shall, however, be included in or added to the combined negligence of the person or persons against whom the plaintiff seeks recovery, including persons with whom the plaintiff settled or whom the plaintiff released under subsection (n) of section 52-572h, when comparing any negligence of the plaintiff to other parties and persons under subsection (b) of said section."

conduct is a substantial factor in producing the plaintiff's injury. The substantial factor test asks . . . whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citations omitted; internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 330–31, 813 A.2d 1003 (2003). "The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue." (Internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 321, 852 A.2d 703 (2004).

This court has determined that a defendant has the right, under a general denial, to introduce evidence that the negligence of another was the sole proximate cause of the plaintiff's injury. See, e.g., *Bernier* v. *National Fence Co.*, 176 Conn. 622, 629–30, 410 A.2d 1007 (1979) (defendant proceeding under general denial entitled to present evidence negating causation element of plaintiff's prima facie case); see also *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 6, 327 A.2d 583 (1973) ("A denial of a material fact places in dispute the existence of that fact. Even under a denial, a party generally may introduce affirmative evidence tending to establish a set of facts inconsistent with the existence of the disputed fact."). We never have been called on to resolve the more specific question, however, of whether a defendant in these circumstances has the right to introduce evidence that the negligence of the plaintiff's employer, who has paid the plaintiff workers' compensation benefits but is not a party to the action, was the sole proximate cause of the plaintiff's injury.

At trial, both Konover and the plaintiff relied on *Durniak* v. *August Winter & Sons, Inc.*, 222 Conn. 775, 610 A.2d 1277 (1992), in support of their opposing positions, with the plaintiff arguing that *Durniak* prohibited Konover from attempting to introduce evidence estab-

lishing that Soneco's negligence was the sole proximate cause of his injury and Konover arguing that *Durniak* did not preclude the introduction of such evidence. We agree with Konover.

The question before the court in *Durniak* was whether it was proper for the defendant in that case to raise the alleged negligence of the employer of the plaintiff's decedent (employee) as a special defense to the employer's intervening complaint when the intervening complaint was based solely on the statutory rights accorded the employer under General Statutes (Rev. to 1991) § 31-293,[11] in order to secure reimburse-

---

[11] General Statutes (Rev. to 1991) § 31-293 (a) provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. If either such employee or such employer brings such action against such third person, he shall forthwith notify the other, in writing, by personal presentation or by registered or certified mail, of such fact . . . and such other may join as a party plaintiff in such action within thirty days after such notification . . . . In any case in which an employee brings an action against a third party in accordance with the provisions of this section, and the employer is a party defendant in such action, the employer may join as a party plaintiff in such action. . . . If such employer and employee join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. The rendition of a judgment in favor of the employee or the employer against such party shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner thereafter deems payable to such injured employee. If the damages, after deducting the employee's expenses as provided above, are more than sufficient to reimburse the employer, damages shall be

ment of workers' compensation benefits paid to the employee. Id., 778 n.3. After noting that General Statutes (Rev. to 1991) § 31-293 unconditionally authorizes reimbursement to the employer if the employer and employee have joined as parties plaintiff and recovered damages from the defendant, and that the statute contains no provision that makes the employer's negligence a ground for limiting the employer's recovery; id., 780; we concluded that "the responsibility for carving out exceptions from any one of [the statute's] provisions belongs to the legislature and not to the courts." Id., 781. We explained that it was inappropriate "to undermine the tradeoffs that underlie workers' compensation by importing contributory or comparative negligence into the no-fault workers' compensation reimbursement program."[12] Id. We also observed that our conclusion

assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with such third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section the employer's claim shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury. The word 'compensation', as used in this section, shall be construed to include not only incapacity payments to an injured employee and payments to the dependents of a deceased employee, but also sums paid out for surgical, medical and hospital services to an injured employee, the one-thousand-dollar burial fee provided by law and payments made under the provisions of sections 31-312 and 31-313."

[12] We concluded that "the competing rights of a defendant and an intervening employer" were "guided by four overlapping principles . . . . First, [General Statutes (Rev. to 1991) § 31-293 (a)] protects an injured employee by allowing the employee to sue a third party tortfeasor in a private cause of action for damages, such as pain and suffering, that are uncompensated by a workers' compensation award. . . . Second, the statute protects an employer by allowing the employer to obtain reimbursement for workers' compensation benefits from a third party tortfeasor, either by becoming an intervening plaintiff in the employee's cause of action or by bringing a separate action derivative of the employee's cause of action. . . . Third, the employer's statutory right to subrogation of the proceeds of the employee's claim against the tortfeasor implements the public policy of preventing double recovery by an injured employee. . . . Fourth, the employer's statu-

was consistent with that of the majority of other jurisdictions that have considered the issue. Id., 782. We acknowledged in a footnote, however, that "[a] different result might . . . follow if, instead of relying on a special defense alleging the intervening employer's negligence, the defendant, having filed a general denial, sought to make an evidentiary showing that it was the employer's conduct rather than the defendant's conduct that had proximately caused the employee's injuries." Id., 782 n.5, citing *Williams* v. *Union Carbide Corp.*, 734 S.W.2d 699, 703 (Tex. App. 1987, writ ref'd n.r.e.) (permitting defendant to assert negligence of nonparty employer as sole proximate cause of plaintiff's injuries).

Konover argues, and we agree, that our holding in *Durniak* does not apply in the present context because *Durniak* is factually distinguishable. The defendant in *Durniak* filed a special defense to the intervening employer's statutory cause of action and alleged that the employee's injuries had been caused by the negligence of his employer. Id., 778. The court in *Durniak* rejected the defense because an employer's right to recover is not derived from common law but is an unqualified statutory right, and there is nothing in the statutory language indicating that the right may be limited by permitting a third party to assert the employer's contributory negligence as a defense. See id., 780. In the present case, by contrast, a decision in favor of Konover would have no effect on Soneco's ability to obtain reimbursement from the plaintiff or the public policy we were seeking to protect in *Durniak* because Soneco, unlike the employer in *Durniak*, was dismissed from the case before it went to trial. In short, "the competing rights of a defendant and an intervening

tory right to reimbursement reenforces the public policy that, between the employer and the employee, workers' compensation provides the exclusive remedy for personal injury to the employee." (Citations omitted.) *Durniak* v. *August Winter & Sons, Inc.*, supra, 222 Conn. 779–80.

employer" are not at issue in the present case. Id., 779. We therefore conclude that our holding in *Durniak* is inapplicable in the present context.

We instead adopt the principle that a defendant is entitled to assert, under a general denial, that the negligence of an employer who is not a party to the action is the sole proximate cause of the plaintiff's injuries. This is consistent with the law of other jurisdictions. See, e.g., *Williams* v. *Union Carbide Corp.*, supra, 734 S.W.2d 703 (defendant entitled to assert, under general denial, that plaintiff's injuries, which were covered by workers' compensation, had been proximately caused by negligence of nonparty employer). As the Supreme Court of Texas explained in *Dresser Industries, Inc.* v. *Lee*, 880 S.W.2d 750 (Tex. 1993), in which the defendant sought to introduce evidence in a personal injury action that the negligence of the plaintiff's employer had caused the accident, even though the nonparty employer was shielded from liability because the plaintiff's injuries were covered by worker's compensation, "[i]f a defendant were unable to show the role of [the] plaintiff's employer in the circumstances of [the] plaintiff's injury, the defendant would be limited in its defense to countering evidence that its negligence caused the injuries. A defendant is entitled to try to convince the jury that not only did it *not* cause [the] plaintiff's injuries, but someone else *did*. A void of evidence concerning the employer's conduct would leave a logical hiatus in the story presented to the jury. With no one allowed to show what part the employer's conduct played, the jury would be left to wonder whether anyone other than the defendant *could* have caused [the] plaintiff's injuries." (Emphasis in original.) Id., 753. Thus, the defendant in *Dresser Industries, Inc.*, was entitled to show that the employer's negligence was the sole proximate cause of the plaintiff's injuries. Id.; see also *Steele* v. *Encore Mfg. Co.*, 7 Neb. App. 1, 8, 579

N.W.2d 563 (1998) ("[r]egardless of the plaintiff's not being entitled to tort compensation from the [nonparty] employer, if the employer's actions are the sole proximate cause of the employee's injuries, then it follows that the defendant's conduct is not a proximate cause, and the defendant should be entitled to argue and have the jury instructed accordingly"); cf. *Chumbley* v. *Dreis & Krump Mfg. Co.*, 521 N.W.2d 192, 194 (Iowa App. 1993); *Caulfield* v. *Elmhurst Contracting Co.*, 268 App. Div. 661, 665, 53 N.Y.S.2d 25, aff'd, 294 N.Y. 803, 62 N.E.2d 237 (1945).

The plaintiff argues that the footnote in *Durniak* does not suggest that a defendant may introduce evidence that the negligence of a nonparty employer was the sole proximate cause of an injury because the footnote specifically refers to the employer as an "intervening" party. *Durniak* v. *August Winter & Sons, Inc.*, supra, 222 Conn. 782 n.5. We disagree. The purpose of the footnote is to contrast situations in which a defendant may not raise a special defense alleging that the intervening employer was negligent because principles of comparative or contributory negligence should not limit the employer's recovery, with situations in which the employer's right to obtain reimbursement is not implicated and, therefore, comparative or contributory negligence may be asserted under a general denial. Id. To the extent that the footnote does not specify that the employer must not be a party to permit the introduction of evidence regarding the employer's liability, the court's citation to *Williams* v. *Union Carbide Corp.*, supra, 734 S.W.2d 699, which stands for the proposition that a defendant who has filed a general denial may assert the negligence of an employer *who is not a party* as the sole proximate cause of the plaintiff's injuries; id., 703; unequivocally resolves any possible ambiguity. Moreover, if this had not been the court's intention, there would have been no reason to cite *Williams* in

the footnote or, correspondingly, fourteen cases in the text, all of which involved actions by intervening plaintiffs to recover workers' compensation benefits, for the *contrasting* principle that "[i]t is generally held that the employee cannot be met with a defense that his own employer's negligence contributed to the injury." (Internal quotation marks omitted.) *Durniak* v. *August Winter & Sons, Inc.*, supra, 782; see id., 782–83 (citing cases).

The plaintiff also argues that §§ 52-572h and 52-102b provide that, in order to adduce evidence of alleged negligence against another entity at trial, the entity first must be made a party to the action. To buttress this argument, the plaintiff cites *Donner* v. *Kearse*, 234 Conn. 660, 662 A.2d 1269 (1995), in which the court concluded, in considering "whether . . . § 52-572h requires a jury to consider the negligence of a plaintiff who had withdrawn his action in apportioning the amount of damages for which the defendant is responsible"; id., 661–62; that the jury could not consider such evidence. Id., 673. The plaintiff, however, improperly extrapolates a general principle from these sources that does not apply in the present context. Sections 52-572h and 52-102b, and *Donner*, which interpreted § 52-572h,[13] are concerned with the apportionment of damages among multiple parties to a legal action, including third parties that have been cited in by defendants for apportionment purposes; see footnotes 9 and 10 of this opinion; whereas the issue in the present case is whether the defendant may introduce evidence that a nonparty employer's negligence was the sole proximate cause of the plaintiff's injuries so as to escape liability altogether.

---

[13] In *Donner*, we explained that a major purpose of the 1987 tort reform was to limit the universe of negligent persons from whom the plaintiff could secure damages to only those individuals who were parties to the legal action or who were specifically identified in § 52-572h (n). See *Donner* v. *Kearse*, supra, 234 Conn. 668.

Accordingly, the legal principles of apportionment set forth in the foregoing statutes and case law do not apply in the present context because Konover's claim does not require consideration of apportionment.

The plaintiff further contends that, if a defendant is allowed to present evidence under a general denial that a nonparty proximately caused the plaintiff's injuries, there no longer will be a need for a defendant to comply with the apportionment scheme set forth in §§ 52-572h and 52-102b. We disagree. If there was any question that the employer's negligence was not the sole proximate cause of the plaintiff's injuries, a defendant would be compelled to file an apportionment claim under §§ 52-572h and 52-102b or otherwise risk being held liable for all, rather than some proportionate share, of the plaintiff's damages.

The plaintiff also argues that Konover could have pursued multiple options to offset its liability but chose not to do so. The plaintiff argues, for example, that Konover could have attempted to keep Soneco in the case and preserved its ability to introduce Soneco's negligence as the proximate cause of the plaintiff's injury by objecting to Soneco's motion for summary judgment and to Soneco's dismissal from the case as an intervening plaintiff. The plaintiff also contends that Konover could have filed an apportionment complaint against Soneco following Soneco's dismissal from the case rather than attempting to proceed under a general denial to adduce evidence of Soneco's alleged negligence. The plaintiff finally asserts that Konover instituted a postverdict indemnification claim against Soneco pursuant to which the trial court awarded Konover a prejudgment remedy in the amount of $8,590,000 on January 19, 2007. We are unpersuaded. The fact that Konover could have taken other actions to compel Soneco's continued involvement in the case, which may or may not have been appropriate or effec-

tive, has no bearing on the legal issue before this court, namely, whether a defendant may introduce evidence of a nonparty employer's negligence as the *sole* proximate cause of the plaintiff's injuries under a general denial. The fact that Konover instituted an indemnification claim against Soneco similarly has no bearing on the issue before this court. We therefore conclude that the plaintiff's arguments have no merit and that Konover is entitled to a new trial. We nonetheless consider whether the trial court properly declined to instruct the jury on superseding cause and whether it properly instructed the jury that Konover had a nondelegable duty to ensure a safe work site because both issues are likely to arise in the new trial.[14]

## II

Konover claims that the trial court improperly denied its request to charge the jury on the doctrine of superseding cause because the court incorrectly determined that *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 440–42, 820 A.2d 258 (2003), completely " 'abrogated' [the doctrine] from Connecticut jurisprudence." Konover contends that our holding in *Barry* is limited and that our reasoning in *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 700 A.2d 38 (1997), mandates continued application of the doctrine even when contributory negligence and apportionment of liability between two or more defendants are not at issue. The plaintiff counters that the trial court properly declined to give the instruction because the doctrine of superseding cause has been abolished in most civil cases and the present action does not fall within any of the recognized exceptions that permit the doctrine's continued use. We agree with the plaintiff.

[14] In light of our conclusion that Konover is entitled to a new trial, we need not address Konover's claim that the plaintiff's counsel improperly exploited the trial court's rulings and appealed to the jurors' passions and prejudices during closing argument.

Our standard of review is well established. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 656, 935 A.2d 1004 (2007).

We begin our analysis by examining the difference between proximate and superseding cause. "Proximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force. . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . [A] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about. . . .

"The function of the doctrine of superseding cause is not to serve as an independent basis of liability, regardless of the conduct of a third party whose negligent conduct may have contributed to the plaintiff's loss. The function of the doctrine is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another per-

son, who may also be determined to be negligent, or to some other force. . . . Thus, the doctrine of superseding cause serves as a device by which one admittedly negligent party can, by identifying another's superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere. . . . If a third person's negligence is found to be the superseding cause of the plaintiff's injuries, that negligence, rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury." (Citations omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 433–35.

In *Barry*, we questioned the continuing viability of the doctrine of superseding cause and concluded "that the rationale supporting the abandonment of the doctrine of superseding cause outweighs any of the doctrine's remaining usefulness in our modern system of torts. . . . [W]e believe that the instruction on superseding cause complicates what is essentially a proximate cause analysis and risks jury confusion. The doctrine also no longer serves a useful purpose in our tort jurisprudence, especially considering our system of comparative negligence and apportionment, [under which] defendants are responsible solely for their proportionate share of the injury suffered by the plaintiff." Id., 446.

The court did not abolish the doctrine of superseding cause in all civil cases, however, explaining that its "conclusion that the doctrine . . . no longer serves a useful purpose is limited to the situation in cases . . . [in which] a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence. Our conclusion does not necessarily affect those cases [in which] the defendant claims that an unforeseeable intentional tort, force of

nature, or criminal event supersedes its tortious conduct." Id., 439 n.16.

Konover does not claim that Soneco's alleged negligence falls within any of the recognized exceptions. We therefore conclude that, because the doctrine of superseding cause has been abandoned in Connecticut, subject only to certain narrow exceptions that do not apply in the present case, the trial court properly declined to give the requested charge.

Konover nonetheless contends that our holding in *Barry* is restricted to cases in which the jury is charged with apportioning liability between multiple defendants and that, under *Wagner*, the doctrine remains viable when, as in the present case, contributory negligence and apportionment of liability between two or more defendants are not at issue. We disagree.

*Barry* clearly establishes that the doctrine of superseding cause is limited to situations in which an unforeseeable intentional tort, force of nature or criminal event supersedes the defendant's tortious conduct, none of which are involved in the present case.[15] Id. Konover also misconstrues *Wagner*, which does not hold, as Konover suggests, that a defendant always is entitled to an instruction on superseding cause when asserting that another person or entity was the sole proximate cause of the plaintiff's injury; rather, *Wagner* stands for the proposition that, "[i]f the third person's negligence is determined to be a superseding cause of the plaintiff's injury, that negligence, rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proxi-

---

[15] Moreover, the doctrine may not apply even in these cases because the court did not state that the doctrine remained viable in *all* cases involving an unforeseeable intentional tort, force of nature or criminal event, but, rather, that its conclusion did "not necessarily affect" such cases. *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16.

mate cause of the injury." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 179. Thus, contrary to Konover's claim, *Wagner* viewed sole proximate cause in the context of multiple tortfeasors. In fact, the court in *Barry* relied on *Wagner* when it stated that "[t]he function of the doctrine [of superseding cause] is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 434, quoting *Wagner* v. *Clark Equipment Co.*, supra, 179. Accordingly, *Wagner* provides no support for Konover's claim that the trial court improperly declined to instruct the jury on superseding cause because, not only did *Wagner not* view superseding cause apart from the negligence of others, but the concept was largely abandoned in *Barry* in favor of comparative and contributory negligence.

## III

Konover next claims that the trial court improperly instructed the jury that Konover had a nondelegable duty to the plaintiff to ensure a safe work site that precluded the jury from considering Soneco's negligence in determining liability. The plaintiff replies that the trial court properly instructed the jury because a contractor's nondelegable duty to ensure a safe work site is an exception to the general rule that a contractor may not be held liable for the torts of its independent subcontractors. The plaintiff specifically argues that Konover was required under its subcontract agreement with Soneco to ensure overall safety on the work site, that Konover was the "controlling employer," as that

term is defined under OSHA,[16] and that Konover's safety director and project superintendent testified at trial that Konover had overall responsibility for safety on the work site. We agree with Konover.

The following additional facts are relevant to our resolution of this issue. On October 19, 1998, Konover subcontracted to Soneco "all site work, offsite road widening, and all building excavation work" in connection with the project. Under the subcontract agreement, Soneco agreed to "supply a skilled and knowledgeable foreman" to supervise the work, to interact with Konover's project superintendent on a daily basis, to hold weekly safety meetings with its employees and to submit to Konover's project superintendent a list of those attending the meetings and a description of what was discussed.

Soneco also agreed, under part 6 of the subcontract agreement, entitled "Safety Requirements," to comply with "[a]ll applicable federal, state, local, or other regulatory agency's safety rules and regulations including, but not limited to, OSHA," "to observe and comply with . . . [Konover's] Project Safety Plan,"[17] to "[m]aintain safe and healthful working conditions," to "[p]rovide

---

[16] The trial court instructed the jury in relevant part: "[T]he [plaintiff claims] that Konover, by virtue of its right to control safety for all workers on the job site, was the controlling employer on the job site. A controlling employer under OSHA is defined as a contractor who has general supervisory authority over the work site, including the power to correct safety and health violations itself or to require others to correct them. Konover does not dispute that it was the controlling employer at the . . . job site in Willimantic in October of 1998. The law requires that such an employer exercise reasonable care to prevent and discover safety violations, including conducting periodic inspections of appropriate frequency. You must then consider whether Konover failed to exercise reasonable care regarding its duties, and, if you so determine, then you would consider whether or not such conduct was a legal cause of the plaintiff's injuries."

[17] John Zook, Konover's safety director at the time of the accident, testified that the project safety plan to which part 6 of the subcontract agreement referred was set forth in Konover's safety manual.

required mechanical safeguards and personal protective equipment," and to ensure "that employees comply with established safety regulations and practices, and the proper wearing and use of all safety equipment provided."[18] In addition, Soneco agreed that, if it failed

---

[18] The subcontract agreement provides in relevant part: "The subcontractor agrees in the performance of this contract to observe and comply with the following requirements (in addition to other contractual safety requirements):

"a. All applicable federal, state, local, or other regulatory agency's safety rules and regulations including, but not limited to, [OSHA] . . . .

"b. The [s]ubcontractor agrees to observe and comply with the Konover . . . Project Safety Plan in effect. Subcontractors are encouraged to develop their own project safety plan that promotes safety awareness among its employees.

"c. Maintain safe and healthful working conditions.

"d. Provide required mechanical safeguards and personal protective equipment.

"e. Insist that employees comply with established safety regulations and practices, and the proper wearing and use of all safety equipment provided. . . .

"f. All areas of the project, with special emphasis on passageways, flammable or combustible storage areas, as well as areas around ladders, stairs and ramps, will be maintained in a clean and orderly condition at all times . . . .

"g. All work in elevated areas . . . requires adequate fall protection in the form of railings, safety belts, or the equivalent. . . .

* * *

"j. Open areas and floor holes which could create a fall hazard will be properly guarded, barricaded, or covered. These safety precautions will be the responsibility of the party creating the hazard.

* * *

"o. Maintain a continuous educational program in safe operating procedures.

* * *

"v. The [s]ubcontractor shall follow the [c]ontractor's safety directions. If the [s]ubcontractor fails to immediately commence compliance with such safety duties within [twenty-four] hours after receipt from the [c]ontractor of written notice of noncompliance, the [c]ontractor may implement such safety measures without further notice and deduct the cost thereof from any amounts due or to become due [to] the [s]ubcontractor.

* * *

"x. Due to increased safety violations on projects and [Konover's] concern for the safety of all who work on our projects, and also due to OSHA's step-up on [its] programs where [g]eneral [c]ontractors are held responsible for the safety on the project; and whereby the [g]eneral [c]ontractor can be cited

to comply with Konover's safety directions following receipt of a written notice of noncompliance, Konover could implement its recommended safety measures and deduct the cost thereof from money due to Soneco for any work that Soneco had performed under the subcontract agreement.

With respect to liability, Soneco "assum[ed] the entire responsibility and liability for all work, supervision, labor and materials provided [under the agreement], whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other things provided by [the] [s]ubcontractor until final acceptance of the work by the [o]wner. In the event of any loss, damage or destruction thereof from any cause (other than [the] [c]ontractor's sole negligence), [the] [s]ubcontractor shall be liable [therefor] and shall repair, rebuild and make good said loss damage or destruction at [the] [s]ubcontractor's cost."

At the time that the agreement was signed, Konover gave Soneco a copy of its construction safety manual. Section 1.6.5 of the manual provides that the responsibilities of the "[p]roject [s]afety [a]dministrators" and "[s]ite [s]uperintendents" employed by Konover include conducting weekly job site safety meetings, inspecting the site frequently and regularly for potential hazards, issuing violation notices to subcontractors, correcting hazards, ensuring the safety of all employees under Konover's management, educating employees about safe working practices and safety regulations, promptly eliminating all unsafe working conditions, promptly investigating any reported accident and enforcing all safety rules.

Section 2.1.1 of the manual also calls for Konover's development of site specific safety plans "to [assure]

for [s]ubcontractor violations, we are implementing a stricter enforcement policy on all projects. . . ."

all employees, subcontractors . . . owners and the general public that [Konover] assumes its obligation to provide a place of employment which is free from recognized hazards . . . and to comply with all safety and health standards established by [OSHA]." Section 2.1.2 requires that the project manager and project superintendent review the drawings and visit the site prior to the start of construction to identify potential hazards and develop equitable solutions to any of the identified hazards during the preconstruction and construction phases of each project.

According to the manual, analysis of safety issues during the preconstruction phase would focus on perimeter fencing, gate locations for access and egress, parking for construction workers, hazardous material and equipment storage areas, subcontractor storage areas, office trailer locations, structural steel unloading and storage areas, crane locations and their impact on other work in the immediate area, electrical lines entering or crossing the site, temporary heating device locations, service and refueling areas for heavy equipment and washout areas for masons and concrete trucks.

Analysis of continuing safety concerns during the construction phase would focus on measures to reduce potential hazards to individual workers, such as the use of personal protective equipment, including hard hats and hearing protection for air compression or concrete sawing work. Measures also would be considered to reduce potential hazards that might arise due to overlapping tasks such as the excavation of trenches near areas where cranes are operating.

Konover also published a safety manual on excavations. The manual described how to excavate trenches safely and to deal with potentially hazardous soil conditions. John Zook, Konover's safety director at the time of the accident, testified that each subcontractor was

responsible for training its own workers, but that, if the project superintendent saw that work was being done improperly on a continuing basis, the superintendent would hold a training session or meet with the subcontractors' foremen, who then would discuss the problem directly with the workers involved. Zook further testified that Konover's project superintendent, James Simmons, was responsible for making frequent and regular inspections to ensure that the company's safety policies were being followed. The superintendent also was authorized to halt activities that might constitute a safety violation or result in harm to workers, such as an improperly secured trench. Zook explained that, in addition to safety, the project superintendent was responsible for coordinating the work of the subcontractors, purchasing materials, meeting with the owners and architects, and preparing for the next day's or week's activities. Zook testified that Soneco's foreman, Gary Pierce, a "competent person" under OSHA, was directly in charge of several Soneco employees who were digging the trench that later collapsed and that one of Pierce's duties was to inspect the excavation on a daily basis.

Simmons subsequently testified that he was in "overall control" of the ten acre construction site. The multiple tasks for which he was responsible included safety, scheduling, interpreting plans, ensuring that the plans were followed and overseeing the work of Konover's subcontractors. Much of Simmons' work was done by telephone, which required him to be inside his trailer because cellular telephones were not in common use at the time. Simmons explained that, when he was "walk[ing]" the site, he watched to make sure that the workers were doing their jobs properly, that they were not getting in each other's way and that the various materials delivered to the site were stored in appropriate places. He testified that, because subcontractors

were experts in their work, they generally took care of their own business, and he merely provided overall supervision and coordination of their activities. He added that he had authority to ensure that all workers on the job site were following OSHA rules, Konover's rules and any other governing rules during the construction process.

Simmons further testified that he had held a series of weekly meetings with the subcontractors before the accident to discuss various safety issues and that the subcontractors or their representatives were responsible for communicating to the workers the substance of these discussions. Each meeting followed an outline and was devoted to a certain subject, such as job built ladders and trenches, but the meeting on trenches was scheduled to take place after the accident. Simmons also testified that each subcontractor was given the same outline, was responsible for his own safety meeting and could conduct discussions with the workers in any order that it deemed appropriate at the time. When the plaintiff's counsel asked Simmons if he agreed with Zook's testimony that "the buck stop[ped] with Konover" on overall safety, Simmons answered in the affirmative. Simmons summed up his responsibilities for safety on the work site as follows: "[W]e tried our best to keep [the work site] as safe as possible. We required the subcontractor[s] to take care of their safety. It was my job to make sure that the subcontractors did the best they could [with regard] to safety . . . . It was not my job to go around [and constantly inspect] and watch everybody work, and make sure that everybody was doing their job safely. I did it when I was walking. I did it when I could. I did it as much as I possibly could. That was my job."

Count two of the plaintiff's complaint alleged negligence against Konover on several grounds, including its failure "to ensure safe working conditions at the job

site when, as the general contractor, it had a nondelegable duty to do so . . . ."

At the conclusion of the trial, the court instructed the jury, over Konover's objection, that Konover, as the general contractor, had a nondelegable duty to ensure a safe work site. The court specifically reasoned that "[Konover] has not contested that it had overall control of safety on the job site. The court therefore instructs you that, as a matter of law, Konover had a nondelegable duty concerning safety, that it could not assign it to someone else and that such duty extended to all workers on the site including the [plaintiff]."

The court also instructed the jury that the plaintiff's allegations of negligence included that Konover had failed (1) to provide or require protection for workers engaged in high-risk trenching operations, (2) to ensure safe working conditions on the job site, (3) to inspect the job site adequately to ensure that safe working conditions existed, (4) to supervise its independent contractors and their employees, including the plaintiff, adequately to ensure compliance with all applicable state and federal regulations, and (5) to enforce compliance with the applicable regulations and good excavating practices.

In denying Konover's motion to set aside the verdict and for a new trial, the trial court rejected Konover's claim that it had improperly instructed the jury that Konover had a nondelegable duty to ensure safety on the work site. The court stated that there was consistent and repeated testimony by Simmons and Zook that Konover had overall responsibility for safety on the work site. The court referred to Zook's testimony that the "buck stop[ped] with Konover" on the issue of job safety and that Konover's rules required an overall safety plan and regular safety inspections. The court acknowledged that Soneco also had responsibilities

under its subcontract agreement with Konover but that Soneco's obligations did not "abrogate the responsibility of Konover for overall job site safety, as it retained such control under its contractual agreements with its subcontractors and in fact on [the job] site." In addition, the court observed that Konover had not contested that it had overall responsibility for safety on the work site and that Connecticut case law has established that, when "a general contractor retains . . . a right of control [over safety], it is said to have assumed a nondelegable duty with regard to safety on the job site."

As we stated previously, when reviewing a challenged jury instruction, "[a]s long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Mahon* v. *B.V. Unitron Mfg., Inc.*, supra, 284 Conn. 656.

"As a general rule, an employer is not liable for the negligence of its independent contractors. . . . The explanation for [this rule] most commonly given is that, since the employer has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and [the contractor], rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it. . . .

"This same rule applies, as a general matter, to general contractors as employers of independent subcontractors: a general contractor is not liable for the torts of its independent subcontractors. . . . We have long held, however, that [t]o this general rule there are exceptions, among them these: If the . . . [general contractor] reserve[s] in his contract general control over the [subcontractor] or his servants, or over the manner of doing the work, or if he in the progress of the

work assume[s] control or interfere[s] with the work, or if he is under a legal duty to see that the work is properly performed, the [general contractor] will be responsible for resultant injury." (Citations omitted; internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 517–18, 825 A.2d 72 (2003).

When "the evidence on the question as to who had control of the area or instrumentality causing the injury is such that the mind of a fair and reasonable [person] could reach but one conclusion as to the identity of the person exercising control, the question is one for the court, but, if honest and reasonable [persons] could fairly reach different conclusions on the question, the issue should properly go to the jury. . . . In addition, the contractor's control need not be exclusive; it is sufficient if it [is] shared with another." (Internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 286 Conn. 563, 599, 945 A.2d 388 (2008).

We conclude that, because a reasonable person could reach but one conclusion as to who exercised control over excavation of the trenches, the question was one for the court. We also conclude that the entity in control was Soneco, rather than Konover, and, therefore, the jury instructions were improper. The trial court relied on Konover's subcontract agreement with Soneco, Konover's own safety rules and the testimony of two Konover supervisors in determining that Konover had overall responsibility for safety on the work site and, therefore, a nondelegable duty to ensure that the work was performed safely. Overall responsibility for safety on the work site, however, does not necessarily translate into a nondelegable duty. Konover's subcontract agreement with Soneco required that Soneco comply with all applicable federal, state and local safety rules and regulations, follow Konover's project safety plan, maintain safe and healthful working conditions, provide

required mechanical safeguards and personal protective equipment, and ensure that employees comply with established safety regulations and practices, including the proper use of all safety equipment provided. In addition, Soneco assumed "the entire responsibility and liability for all work, supervision, labor and materials" provided under the subcontract agreement until final acceptance of the work by the owner. Soneco also agreed to accept liability for any loss, damage or destruction from any cause other than Konover's sole negligence. The trial court cited no provisions of the subcontract agreement, and we have found none, to support its conclusion that Konover had a nondelegable duty to ensure safety on the work site.

Furthermore, Konover's safety manual was not the source of a contractual or legal duty to provide a safe work site but was merely an informational tool.[19] See *Pelletier* v. *Sordoni/Skanska Construction Co.*, supra, 264 Conn. 532–33 (orientation and procedures manual, which contained safety provisions, "was an informational tool designed to educate the [subcontractor's employees] in the protocols for the job site, not a legally binding contract"). Although the safety manual described Konover's interest in providing safe conditions on the work site, it did not suggest that Konover would engage in daily supervision of its subcontractor's employees. Rather, the manual suggested that Konover would foster safety by developing site specific safety plans to identify potential hazards that might arise during the preconstruction and construction phases of the project and by devising equitable solutions to address such hazards. None of the safety concerns discussed in the manual involved control over the manner in which

---

[19] Indeed, if safety manuals were construed more broadly, as the plaintiff proposes, general contractors would be exposed to far greater liability and would have little incentive to publish them.

specific tasks would be performed by the subcontractors' employees.

The fact that two Konover supervisors, Zook and Simmons, testified that Konover had overall responsibility for safety on the work site or that Konover was the "controlling employer" under OSHA does not mean that Konover had a nondelegable duty to provide a safe work site that precluded the jury from considering Soneco's negligence. Neither Zook nor Simmons testified that Konover retained direct control over Soneco's work, over Soneco's employees or over the manner in which the work was to be performed, nor did either testify that Konover assumed direct control over, or interfered with, Soneco's responsibility to perform its work safely. See id., 517–18. To the contrary, both Zook and Simmons emphasized that, even though Simmons exercised general supervision over the work site, Soneco had direct responsibility for supervising the work of its employees. Accordingly, we conclude that the trial court improperly instructed the jury that Konover had a nondelegable duty to ensure a safe work site.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.